ARRINGTON VS. CONREY ET AL.

The Circuit Court may, under its high equity powers, cause its record to be amended at a subsequent term, in whatever may be necessary to make it speak the truth, whenever the ends of justice require such amendment. (*King & Houston vs. State Bank*, 4 *Eng.* 188.)

Though such amendments may sometimes be made by interlineation, the more regular mode after the judgment term, is, by an order of court reversing the defective entry, followed by a new one, *nunc pro tunc*, such as should have been made in the first instance. *Ib.* But the entry of the new judgment is, virtually, a reversal of the first one.

Where it is clearly made to appear that there is an omission or error in the entry of the judgment, as to the amount recovered, caused by the misprision of the clerk of the court, such judgment should be amended.

*Appeal from the Circuit Court of Ouachita County.*

Hon. THOMAS HUBBARD, Circuit Judge.

WATKINS & GALLAGHER, for the appellant.

CUMMINS, for the appellee.

Mr. Justice HANLY delivered the opinion of the Court.

It appears from the transcript in this cause, that on the 24th August, 1854, the appellees caused notice in writing to be served on the appellant, to the effect, that they would apply to the Ouachita Circuit Court, at the term thereof to be holden in October next thereafter, for judgment against him, (appellant,) *nunc pro tunc*, in their (appellees') favor, as of the 7th October, A. D. 1851, for the sum of $424 66 cents damages, with 8 per cent. interest until paid, instead of the sum of $142 66, with eight per cent. till paid, as rendered by said Circuit Court of Ouachita county, on the 7th day of October, A. D. 1851, in favor of the appellees, and against appellant. It further appears from the transcript, that the notice aforesaid was filed in the office of the clerk of the Circuit Court of said county of Ouachita, on the 29th August, 1854; that at the October term of such court, for 1854, the appellees came and filed their motion in writing, verified by affidavit, in effect, that, at the October term of said court, for 1851, they recovered a judgment against the appellant in a suit founded on a promissory note, for $281 60 cents, bearing interest at eight per cent. per annum from maturity: the same being dated 3d December, 1844, and due six months from date, payable to the order of appellees, and signed "Taylor & Arrington:" the said Arrington being alone sued in the action; that at the time at which such judgment was so rendered, the appellant rested his defence upon two pleas of the statute of limitations of five years, and two pleas of the statute of limitations of three years; that said appel-

lees took issue upon each of said pleas ; said issues were submitted by consent, to the court sitting as a jury, on no other evidence than the note sued on ; that said note was still of record, and ready to be shown to the court ; that the court upon the submission of said cause, found in favor of the appellees upon the issues to the two pleas of the statute of limitations of five years, and in favor of the appellant upon those to the statute of three years, but gave judgment for the appellees *non obstante veredicto*, thus rendering judgment, on all the issues for the appellees, for the amount of said note, with 8 per cent. interest, from its maturity, until judgment ; that according to the finding and judgment of the court as aforesaid, the judgment now of record should be for the sum of $424 26 cents, damages, with interest at eight per cent. till paid; but that, by a mistake or misprision of the clerk of said court, said judgment was recorded as being only for the sum of $142 66 cents, with interest at eight per cent. till paid ; that the records of said court still remaining, clearly show the error of said clerk in the recording of said judgment, and asking that the court would amend the said record by entering judgment, *nunc pro tunc*, as of the 7th October, 1851, for the sum of four hundred and twenty-four dollars, and twenty-six cents, the amount for which the judgment of the court was really rendered, and would then have been on the record, but for the misprision of the clerk as aforesaid.

The consideration of this motion, both parties appearing, was continued by consent, from October term, 1854, to the succeeding term in April, 1855.

At the April term, 1855, both parties again appeared, and the motion to amend as above, was called up, and in support thereof, the appellees read to the court the original record, including the declaration, pleas, replications and note sued on, and the various entries made in respect to said cause, from its commencement to its result.   He furthermore read the written statement, made under oath in open court, of one *Thompson*, who stated, in substance, that at the time the proceedings were had in the cause aforesaid, he was the assistant as deputy of the clerk of the Cir-

cuit Court of Ouachita county; and, as such, attended mostly to the business of the court, and entering upon the records the proceedings thereof; that he recollected distinctly all that occurred at the time the final judgment in this cause was rendered, at the October term, 1851, of this court, and by his statement sustained the facts set forth in the motion of the appellees above stated; stating further that the note in question, the foundation of the final judgment in this cause, was handed, at the request of the court, (made at the time said judgment was rendered, 7th October, 1851,) to the counsel of the appellee, to compute the interest, with directions that the principal thereof, and the interest which had accrued, should be added together as the damages, and that judgment should be entered for that amount; that said note was returned to said Thompson, with a calculation endorsed thereon, in pencil, showing as the result $142 66, which he, Thompson, took to be the amount of damages claimed, but on subsequent examination he discovered was only the amount of interest due on said note from its maturity to that time, and that through mistake and inadvertence, he, as such deputy clerk, entered up said judgment for the amount of said interest, $142 66, as the damages, omitting to add thereto the principal of said note, $281 60.

To the reading of which statement, the appellant at the time objected, and his objections being overruled, he excepted. The appellant also objected to the reading of the original record, the pleas, replications, entries, and the note sued on in the original cause, at the time they were respectively offered, but his objections were overruled by the court, and he excepted.

The above was all the evidence introduced in support of the motion, by the appellees.

The appellant then proceeded to prove, by the original files or records of said court, that, at the October term, 1851, he prayed for and obtained an appeal, from the judgment then rendered in this cause, to the Supreme Court, and this was all the evidence introduced by him.

On this state of case, the court below, on the 5th April, 1855,

sustained the motion of the appellees, and in pursuance thereof, proceeded to amend the record in conformity therewith, by entering judgment, then, as of the 7th October, 1851, for the sum of $424 26 cents, in lieu of the sum of $142 66, as entered of that date by mistake.

To the opinion of the court, sustaining said motion of the appellee, and the entry of the judgment, *nunc pro tunc*, the appellant excepted, and embodied the evidence aforesaid therein.

The cause is brought here by appeal and supersedeas; the appellant having entered into recognizance in the court below with that view.

Some six errors are assigned by the appellant, why the judgment of the Ouachita Circuit Court should be reversed.

We will not pretend to notice the various errors assigned, conceiving, as we do, that the view that we shall take of the case, will dispense with a detailed notice of the points arising upon the assignment.

The record of the proceedings of the original suit does not come up, and is not presented in our present inquiry, further than as they are presented by the bill of exceptions, shown in the transcript in the present proceedings. We will not look to that to determine whether there was or was not error in the original suit, and the proceedings thereunder, holding, as we do, that they are not involved in the present inquiry.

The question under consideration is therefore narrowed down to the simple enquiry whether the court below did or did not err in permitting the amendment at the April term, 1855, of the Ouachita Circuit Court.

That "the authority of a court to amend in such cases" (as the one for instance, presented for our consideration) "does not arise from the statute of *amendments and jeofails*, but from the high equity powers of the court, which enable it to amend in whatever may be necessary to make the record speak the truth, whenever the ends of justice require such amendment," is to us, a self-evident proposition, and does not admit of controversy, at

this late day.  See *King & Houston vs. State Bank*, 4 *Eng. Rep.* 188.  We, therefore, hold that the court below possessed, both the *power* and *authority*, to allow the amendment made in the case at bar.

Our next inquiry will be, did the court permit the amendment *in the manner* and *mode* authorized by law ?  And as to this, we conceive the case of *King & Houston vs. State Bank*, above cited, is conclusive ; for, say the court in that case, "although many amendments may be appropriately made by interlineation, especially when the order of the court granting them, specifies and describes the particular amendment allowed to be made, * * * still the more regular mode of making these amendments, after the judgment term, is, by an order of court, *reversing the defective entry, followed* by a new one, *nunc pro tunc*, such as should have been made in the first instance : which was the precise *mode* and *manner* pursued in the case now being considered; except, that the court in the *last order* did not *reverse the first*, in *express words*, but which we hold to have been virtually done by the last order.

The only remaining inquiry for us is, did the court *discreetly* exercise the *power* and *authority* inherent in it, in allowing the amendment from the facts developed by the transcript?

We are at a loss to conceive of a case which could be more strongly made out and more conclusively established by the facts, than the one at hand.  Every circumstance and fact point unerringly to the conclusion, that there was an *omission* or *error* in the first judgment, and that it was caused by the misprision of a person other than the court or judge.  The error is purely an error of fact and not of law ; one proceeding from an officer or person acting in a ministerial capacity; and, therefore, to prevent the *real* and *true* judgment of the court from being defeated, should have been amended.

We, therefore, affirm the judgment of the Ouachita Circuit Court in all things touching this proceeding.