## Case No. 5,445.

### GILMAN v. LIBBEY.

[4 Cliff. 447.] 1

Circuit Court, D. Maine. April Term, 1878.

COURTS—AMENDMENT OF RECORD—CORRECTION OF MISTAKES—OMISSION OF CLERK—EQUITY—ANSWER RESPONSIVE TO BILL—PROOF—COSTS.

1. Courts of record have power at any time, as well after as during the term at which any entry is made, of their own motion, at the suggestion of any party interested, and without notice to any one, to correct the mistakes and supply the omissions of their clerks or recording officers, so as to make the record conform to the truth of the case.

2. They are the exclusive judges of the necessity and propriety of so amending and correcting their records, and of the sufficiency of the proofs offered to show the necessity of such action.

3. It is a universal rule that the mere omission or misprision of a clerk cannot be permitted to deprive a party of his rights, if the means of supplying the defect or correcting the mistake are within the reach of the tribunal whose proceedings are incorrectly recorded.

4. Where the answer is responsive to the bill of complaint, and positively denies the matter charged, and the denial is made in respect to a transaction within the knowledge of the respondent, the answer is evidence in his favor, and unless it is overcome by the satisfactory testimony of two opposing witnesses, or of one witness, corroborated by other facts and circumstances, which give to it greater weight

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

than the answer of the respondent, it is conclusive. So that the court will neither make a decree nor send the case to trial, but will simply dismiss the bill of complaint.

5. When the complainant calls upon the respondent to answer an allegation, he admits the answer, if duly filed, to be evidence, and if it is testimony, it is equal to the testimony of any other witness. As the complainant cannot prevail if the balance of proof is not in his favor, he must have circumstances in addition to his single witness in order to turn the balance.

6. The bill of complaint contained an allegation to the effect that the defendant in the present suit, while judge of the supreme judicial court of the state of Maine, ordered judgment for himself in a suit in that court where he was plaintiff, and the present complainant defendant. This allegation was not true, but the record of the state court, by the omission of the clerk thereof, seemed to afford ground therefor. After the beginning of this suit, the record of the state court was amended by the court, so as to conform to the fact, which was, that the judgment had been ordered by another justice of the state court, and not by this respondent. *Held*, that the respondent in this case was still entitled to his costs.

7. If the state court record did not suggest the error, if inquiry had been made, it could have been ascertained that this respondent was not presiding in the state court when the judgment in his favor was entered.

Bill in equity. The material allegations in the complainant's bill were as follows: In 1867 she [Anna K. Gilman] was executrix, with others as executors, of the last will and testament of Nathaniel Gilman, both in the state of Maine and in the state of New York. In the month of March of that year, being involved in litigation in the county of Kennebec as such executrix, and also in proceedings for the partition of real estate devised to her in common and undivided, with others in said county, and having need of counsel, she applied to the respondent [Artemas Libbey] for his services in his capacity as attorney and counsellor at law, and at the time of such application it was specially agreed that the respondent should look to the estate of said Nathaniel Gilman alone for reimbursement for any services rendered or disbursements made in the matters aforesaid, and should not hold her responsible therefor until he should have rendered a bill to said estate for the same, and such bill should have been presented to the surrogate's court, and there allowed, and the amount thereof should have been received by her; and that she should be in no case liable to the respondent for any sum over and above what she should receive from said estate for such payment; and the respondent then and there agreed to act in the matters aforesaid, upon the terms aforesaid, and did appear in the actions then pending in the supreme judicial court for said state, and said probate court, in which she was a party, and did thereafter act for her in his said capacity until his appointment as judge of the supreme judicial court of Maine. That in 1871 the respondent rendered an account for his services and disbursements to that time in said matters, which she believed in-

cluded all charges and was the end of litigation, amounting to $563.71, which she presented to the surrogate's court, and asked for an allowance thereof, but she had not been able to procure an allowance thereof at the time of filing her bill. That on Feb. 26, 1875, the respondent commenced a suit against her in the supreme judicial court, county of Kennebec, and caused her real estate in that county to be attached. That the suit was entered at the March term of that court in that county, and continued to the August term thereof, when an order for personal service of the writ by copy thereof, and of the order of the court thereon, was issued by the court, and was duly served on her on Aug. 7, 1875, at Augusta, in said county. That said service gave her the first actual information of the pendency of said suit, of which she had been, up to that time, wholly ignorant. That in that suit the respondent claimed the sum of $898.71, which included the bill before rendered, and also for his services from the time that bill was rendered to the time of the commencement of the suit, amounting to $335. That, upon the service of the order of court upon her, she applied to the respondent for an explanation thereof, whereupon he represented to her "that said service was a matter of form only and for her benefit, that he would not take any further proceedings in the matter, but would let it remain as it then was, and wait until" she "should get the sum aforesaid allowed by said surrogate's court," "and would not in any way prejudice" her "in her rights and interests in said property." "And at the time of said representations she supposed him to be continuing as such counsel, she relied on his said representations, and made no defence to said action." "That contrary to his said representations and promises, he proceeded to have the notice to" her "aforesaid proved, and an entry thereof made on the docket" at the October term, 1875, and caused a default to be entered against her, and the case to be continued to the next March term. That said respondent was appointed a justice of said court on April 23, 1875, and as such justice held said court at the March term, 1876, and ordered and decreed judgment in said suit in his own favor on April 28, 1876. That on April 29, 1876, execution was issued on said judgment and put into the hands of the sheriff of said county, who, on May 25, 1876, seized her equity to redeem certain lands in said county, the same being under a mortgage to the Augusta Savings Bank, and, after giving due notice of the time and place of sale, sold said equity to the respondent on July 1, 1876, for the amount of said judgment and the officer's fees on the execution, being $1,020.78. That she had well hoped that the respondent, as having assured her that said proceedings were a mere form, and for her benefit, and that he would not prejudice her rights thereby, would, upon request thereto, release to her all claim of right or title in and to said real estate, but that he claimed to hold the same by virtue of the sale, unless redeemed by her. The prayer of the bill was that the deed might be decreed to be unauthorized and of no legal force or effect, and that the respondent might be decreed to release to complainant all her right, title, and interest, conveyed to him by said deed, and for general relief. The answer denied all the allegations of the bill relative to the special agreement as to how respondent was to be paid for his services, and alleged that a large part of the services were rendered for the complainant in her private capacity; also the allegations in regard to the promises made to complainant after the service of the writ; also that he held the court in which judgment was rendered for his services. In short, all the substantial allegations of the bill were denied in the answer. The principal evidence for the complainant was given by herself. The respondent testified, upholding the allegations of the answer.

M. W. Gage, for complainant.

The respondent was guilty of duplicity as counsel toward his client. Hill v. Bush, 19 Ark. 522. He led her to believe that in his suit he was seeking security only, and would proceed no further. Peter v. Wright, 6 Ind. 183; Gill v. Carter, 6 J. J. Marsh. 484; Cooke v. Nathan, 16 Barb. 342; McCormick v. Malin, 5 Blackf. 509; Jenkins v. Eldredge [Case No. 7,266]. The judgment in the state court was a nullity at the time it was entered. No amendment could render it valid. The amendment of the record of the state court was insufficient, in that the amended record would still show that respondent acted jointly with another justice in the rendition of judgment in his own behalf. Cox v. Bennett, 13 N. J. Law, 165. A court of equity has the power to vacate and set aside a judgment, and all the proceedings had thereunder. Warner v. Blakeman, *43 N. Y. 487. In this case, Woodruff, J., delivering the opinion, the court said: "It is the just and proper pride of our matured system of equity jurisprudence that fraud vitiates every transaction; and, however men may surround it with forms, solemn instruments, proceedings conforming to all the details required in the laws, or even by the formal judgments of courts, a court of equity will disregard them all if necessary, that justice and equity may prevail." In the case of Dobson v. Pearce, 12 N. Y. 157, Allen, J., said: "A party must bring a distinct original suit as plaintiff, to get rid of and set aside the judgment. . . . So fraud and imposition invalidate a judgment, as they do all acts; and it is not without semblance of authority that it has been suggested that at law the fraud may be alleged whenever the party seeks to avail himself of the results of his own fraudulent conduct by setting up the judgment, the fruits of his fraud.

. . But whether this be so or not, it is unquestionable that a court of chancery has power to grant relief against judgments when obtained by fraud. Any fact which proves it to be against conscience to execute a judgment, and of which the injured party could not avail himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an interference by a court of equity." See, also, Wright v. Miller, 8 N. Y. 9. In the case of Byers v. Surget, 19 How. [60 U. S.] 308, the court used the following language: "But with any fraudulent conduct of parties in obtaining a judgment, or in attempting to avail themselves thereof, this court can regularly, as could the circuit court, take cognizance. Such a proceeding is in the legitimate province of a court of equity, and constitutes an extensive ground of their jurisdiction. The true and intrinsic character of proceedings, as well in the courts of law as in pais, is alike subject to the scrutiny of a court of equity, which will probe and either sustain or annul them according to their real character, and as the ends of justice may require." Cox v. Bennett, 13 N. J. Law, 165.

T. T. Snow, for respondent.

As to the allegations in the bill that the respondent, as a justice of the supreme judicial court of Maine, rendered the judgment against the complainant in his own favor, they are fully met and disposed of by the answer, and the duly authenticated copy of the record of the judgment, put in evidence by the respondent. But, if that allegation is true, we maintain that it gives this court no jurisdiction in equity, to decree a release of the interest in the land sold to respondent on execution issued on that judgment. The respondent had no jurisdiction of the suit, and the judgment is absolutely void. Penobscot R. R. Co. v. Weeks, 52 Me. 456; Eastman v. Wadleigh, 65 Me. 251; Pennoyer v. Neff, 95 U. S. 714,—in which the doctrine is fully examined. This court has no jurisdiction in equity to set aside and annul the judgment of a state court on the ground that it is void for want of jurisdiction. The judgment being void, the remedy is clear and adequate at law. Pennoyer v. Neff, supra. That case was ejectment to try the title to land taken to satisfy a judgment held to be void for want of jurisdiction. This suit is brought to try the title to the land sold, and not to annul the judgment. The prayer of the bill is that the deed may be decreed unauthorized and of no effect, and that respondent may be decreed to release the title acquired by the purchase to the complainant. The judgment cannot be thus attacked collaterally. It is binding on the parties to it until reversed or annulled in a process brought directly therefor. Christmas v. Russell, 5 Wall. [72 U. S.] 290; Homer v. Fish, 1 Pick. 435; McRae v. Mattoon, 13 Pick. 57; McClees v. Burt, 5 Metc. [Mass.] 198;

Boston & W. R. Corp. v. Sparhawk, 1 Allen, 448; Dunlap v. Glidden, 31 Me. 435; Davis v. Davis, 61 Me. 395; Smith v. Abbott, 40 Me. 442. This is the rule in equity as well as at law. Boston & W. R. Corp. v. Sparhawk, supra. The circuit court, as a court of equity, possesses no revisory power over the state courts in the exercise of their jurisdiction. Tobey v. Bristol [Case No. 14,065]. By the law of this state, the state court has no jurisdiction in equity to annul a judgment for fraud. The remedy is by review. That remedy is clear and adequate, and protects both parties. Chalmers v. Hack, 19 Me. 124; Cowan v. Wheeler, 25 Me. 267; Warren v. Baker, 43 Me. 570. The record of the judgment in this case is entitled to the same faith and credit in every other court in the United States as it has by law or usage in the courts of this state. Christmas v. Russell, supra. But if this court has jurisdiction in equity to annul a judgment of the court of this state, which we do not admit, though we are aware there are decided cases looking strongly that way, it is only by bill brought directly therefor, and in which the fraud is distinctly alleged and proved. Clark v. Hackett [Case No. 2,823]. This bill does not allege fraud on the part of the respondent, in procuring the judgment. It alleges an attachment of complainant's real estate, and a due service of the writ upon her, and a promise by the respondent that he would let it remain as it was, and a breach of that promise by respondent, by taking judgment about nine months thereafterwards. It does not allege that the promise was made for a fraudulent purpose, nor that it was fraudulently broken. For aught that appears in the bill, the promise may have been made and broken, as alleged, with no actual fraud. And it is for actual fraud only, that courts of equity will annul a judgment. But, assuming that the bill properly alleges fraud in procuring the judgment, the case, as presented by the bill and the complainant's evidence, is one of fraud against Mr. Baker, by attaching and holding the complainant's real estate to prevent his taking it for her benefit. This, as she represents her case, was the motive of the respondent, fully participated in by her; for she alleges, in her bill, that she fully supposed the respondent would release to her the title he acquired by his purchase, on request. In such case equity will not give relief. Wells v. Smith, 13 Gray, 207. The respondent takes issue with the complainant upon all the allegations in her bill, upon which she relies in proof of fraud. They are as to the terms of the contract of employment, and the promise of respondent to take no further proceedings in his suit, and the breach of that promise. The answer is responsive to the bill. It not only positively denies the allegations as to the contract and promises, but it avers what the real transactions were. "It must prevail unless it is overcome by the testimony of two witnesses to the substantial

facts, or at least by one witness and such attendant circumstances as will supply the want of another witness." Clark v. Hackett, supra. The evidence of the original contract is material only as tending to show fraud. The court will not grant relief because the judgment is for too large a sum, nor because nothing is in fact due; but if the evidence shows that nothing was due the respondent, it may tend to show fraud. The complainant alleges in her bill, and testifies that, by the contract, she was in no event to be personally liable. This is positively denied by the respondent in his answer, and in his testimony. Which is the more strongly corroborated by the circumstances and the written evidence? We have failed to discover any corroboration of complainant. She testifies that she never became personally liable to counsel for services rendered to her as executrix, and that all services rendered by the respondent were rendered to her in that capacity. It is in evidence that Mr. Baker was her counsel for several years. That she did not pay him. That he brought suit against her and her brother and got judgment. That he brought suit on their official bond, after having a demand made on the execution against them. That the complainant defended the suit on the bond successfully, on the ground that his bill for services was not a claim against her father's estate, but against her personally. Baker v. Moor, 63 Me. 443.

Before CLIFFORD, Circuit Justice, and FOX, District Judge.

CLIFFORD, Circuit Justice. Courts of record have power at any time, as well after as during the term at which any entry is made, of their own motion, or on the suggestion of any party interested, and without notice to any one, to correct the mistakes and supply the omissions of their clerks or recording officers, so as to make the record conform to the truth of the case, and they are the exclusive judges of the necessity and propriety of so amending and correcting their records, and of the sufficiency of the proofs offered to show the existence of such necessity and propriety. Balch v. Shaw, 7 Cush. 282. Authorities to show that such courts have full power to amend their records, and that they are the sole judges of the correctness of the entries made therein, and of the necessity and propriety of any such correction, are numerous, unanimous, and conclusive. Sheppard v. Wilson, 6 How. [47 U. S.] 277; Hudgins v. Kemp, 18 How. [59 U. S.] 534; Close v. Gillespey, 3 Johns. 526; Lee v. Curtiss, 17 Johns. 86. It must be so, else the rule which rigidly excludes all evidence to contradict or control a record, when offered in support of judicial proceedings, would work very gross and irremediable wrong and injustice. Hence the universal rule that the mere omission or misprision of a clerk cannot be permitted to deprive a party of his rights, if the means of supplying the defect or correcting the mistake are within the reach of the tribunal whose proceedings are erroneously or defectively recorded. Batty v. Fitch, 11 Gray, 185.

Services as an attorney and counsellor at law were rendered by the respondent for the complainant, in certain matters of litigation and proceedings for the partition of certain real estate devised to her by her deceased father, in common and undivided with certain other parties. It is not denied that the respondent rendered certain services; but the complainant alleges that he rendered them for her as the executrix of her father's estate, and that he agreed that he would look to the estate alone for reimbursement for any services he might render, and that he would not hold her responsible for the same until he should render the bill to the estate for such services, and that she should in no case be held liable for any sum over and above what she should receive from said estate for such payment; that during the year 1871 he rendered an account for such services, amounting to $563.71, which was presented to the proper probate court for allowance, where it is still pending.

All of these matters are merely preliminary to the more material grounds of complaint, which are as follows:—

That the respondent brought an action against her, returnable to the supreme judicial court of the state, held at Augusta, within and for the county of Kennebec, on the first Tuesday of March, 1875, and that he caused her real estate situated in that county to be attached, to respond for any judgment he might obtain. Certain proceedings as to notice followed, which are not material in this investigation.

That the account annexed to the writ amounted to $898.71, including charges to the amount of $335, in addition to the amount pending in the probate court, which subsequent charges, the complainant avers, are unjust, exorbitant, and greatly disproportionate to the services rendered, and that, if rendered at all, were rendered without her knowledge, consent, or authority.

That she applied to the respondent for an explanation, whereupon he represented to her that the service of the writ was a matter of form only, and for her benefit; that he would not take any further proceedings in the matter, but would let it remain as it then was, and wait until she should get the amount allowed out of the estate, and would not in any way prejudice her in her rights and interests in her property.

That, contrary to his said representations and promises, the respondent proceeded to have the notice proved, and, at the October term of the court, 1875, caused her to be defaulted, and the cause to be continued to the next term.

That, at the next term of the court, holden at Augusta the first Tuesday of March, 1876,

the respondent was the presiding justice, and that, as such justice, he did unlawfully and improperly, without any consent of the complainant, and without having jurisdiction of the cause, render, order, and decree a judgment in said cause, in favor of himself, as plaintiff, and against the complainant, as defendant, for the sum of $966.10 debt or damage, and $18.11 costs of suit.

That execution issued on the said judgment, and that the sheriff seized and sold all the right the complainant had to redeem the certain parcels of real estate described in the bill of complaint to the respondent, he being the highest bidder, for the sum of $1,020.78.

That the sheriff conveyed the premises sold to the respondent, who caused his deed for the same to be duly recorded.

That the respondent, instead of admitting that said proceedings were a mere form, and for the benefit of the complainant, now pretends and claims to hold said real estate as under a legal and valid levy and sale, and that said judgment, execution, levy, and sale are valid and legal, and that he is entitled to keep the title under such levy, purchase, and sale.

Service was made, and the respondent appeared and filed an answer. Such parts of the answer as are deemed material in this investigation will be reproduced, and no others.

He admits that he was, at the time alleged, an attorney and counsellor at law, and that he was in the practice of his profession; that he was retained by the complainant specially and generally, as fully set forth in the answer, and that he did appear and act for her in suits where she was a party in her own right and as executrix.

Matters of that sort are fully admitted; but he alleges that the allegations in the bill of complaint, in respect to the alleged contract between him and the complainant, "are not true in whole or in any particular." Before denying the same, the answer copies the allegations of the bill of complaint, and appends thereto the denial that those allegations "are not true in whole nor in any particular," which must be understood as equivalent to a separate denial of each of the preceding allegations.

That the suggestion was never made to the respondent, that he must rely upon the said estate for payment, until August, 1875, but that the employment was made and the services rendered in the ordinary mode of retainer and employment of counsel, with nothing agreed as to the manner of payment.

He admits that he rendered the said bill, and requested payment, but alleges that a large portion of it was for services rendered her in her private capacity, and in no way relating to her capacity as executrix.

He also admits that he commenced the suit for the full amount of his account; that the real estate was attached, and the proceedings had in respect to notice; but avers that the allegation that the service of the notice was the first information the complainant had of the suit is not true; that, before the said service, he had an interview with her, in which he fully informed her of the pendency of the suit and of the reasons why he commenced it, and urged her to employ counsel to appear to save the cost of service and to protect her rights, but that she declined to do so, and that thereupon he procured the order of notice and had the writ served.

That the charges in his account for services rendered subsequent to the first bill presented, were rendered with the knowledge of the complainant in the suits specified in the answer and that the charges are fair, reasonable, and just.

He avers that the allegations of the bill of complaint, as to the representations and promises which it is alleged that the respondent made when the complainant called upon him for an explanation, are not true. On the contrary, he alleges that he had an interview with her on the day before the writ was served, in which he informed her of the pendency of the suit, and stated to her the reasons why he commenced it, which were in substance that he had been rendering services and making disbursements in her behalf for several years without payment, and that he thought it was for his interest, as well as hers, in view of the circumstances stated, that he should secure his debt.

That it was then, for the first time, that the complainant requested him to rely on her father's estate for payment, which he declined to do, explaining to her that he had no claim against said estate, that his employment was by her, and that he must proceed with the suit.

That it is not true that, at the time the judgment was rendered in the case, the court was held by the respondent; nor is it true that he rendered, ordered, or decreed judgment in the same in favor of himself against the complainant. His denial in that regard is explicit and unqualified; and he avers that the court, at the time the judgment was rendered, was held by Charles Danforth, a justice of said court, and that said judgment was rendered, ordered, and decreed by said Charles Danforth, so holding said court as a justice thereof, and that the respondent, at the time of the rendition of said judgment, was holding a term of said court as a justice thereof in Calais, in and for the county of Washington, in said state.

The respondent also admits that he assured the complainant and her counsel, before she brought the bill of complaint, that he would not claim a forfeiture of the estate if she should not be able to redeem within the time limited by law, and he avers that he met her counsel on the fourth of July, 1877, who then paid him the full amount due to redeem said estate from said sale, and that he, the respondent, then and there de-

livered to her said counsel his deed of release and quitclaim in due form, dated one day earlier, releasing and conveying to her all of said estate sold and conveyed to him by the sheriff in virtue of the execution issued upon the said judgment.

Where the answer is responsive to the bill of complaint, and positively denies the matter charged, and the denial was in respect to a transaction within the knowledge of the respondent, the answer is evidence in his favor, and, unless it is overcome by the satisfactory testimony of two opposing witnesses, or of one witness, corroborated by other facts and circumstances, which give to it greater weight than the answer of the respondent, it is conclusive, so that the court will neither make a decree nor send the case to trial, but will simply dismiss the bill of complaint. 2 Story, Eq. Jur. (8th Ed.) § 1528; Banks v. Geary, 5 Pet. [30 U. S.] 111. Two witnesses, or one witness with probable circumstances, says Marshall, C. J., will be required to outweigh an answer asserting a fact responsively to a bill in equity. He also states very clearly the reason for the rule, which is that, when the complainant calls upon the respondent to answer an allegation, he admits the answer, if duly filed, to be evidence, and if it is testimony, it is equal to the testimony of any other witness, and as the complainant cannot prevail if the balance of proof is not in his favor, he must have circumstances in addition to his single witness in order to turn the balance. Clark's Ex'rs v. Van Reimsdyke. 9 Cranch [13 U. S.] 160; Hughes v. Blake, 6 Wheat. [19 U. S.] 453; Delano v. Winsor [Case No. 3,754].

The application of that rule to the pleadings in the case before the court disposes of most of the issues between the parties without entering into any discussion of the proofs. Two of the charges, however, are of such a character that they ought not to be passed over without careful examination. They are as follows:—

1. That the respondent presided in the court and rendered the judgment against the complainant in his own favor.

2. That he induced the complainant not to defend his suit against her, by promising that he would not claim a forfeiture of the estate in case the judgment was in his favor, and she did not pay the same within the time limited by law, and that he refused to fulfil that promise.

Flagrant as the first charge is, it is proper to say in the outset that there is not a word of truth in it when the facts are properly understood. Sufficient appears to show that the term of the court referred to, commenced at Augusta on the 7th of March, 1876, the respondent presiding as a justice of the court, and it is conceded that he continued to preside all, or nearly all, the time until near the close of the term, when he was called away to hold a term of the court in a distant county of the state. Cases of the kind often arise where a justice who has been holding a term in one county, is obliged to leave to discharge the duty assigned to him in another; nor is it at all unusual that another justice in such a case comes in to finish the term left without a justice, in consequence of the departure of the one who, up to that time, had held the term. Pursuant to that custom, Justice Danforth came in and held the court at Augusta on the last day of the term. Judgments not previously rendered are usually rendered on the last day of the term by special order, or under the general order. Beyond all doubt, the judgment in this case was rendered by Justice Danforth at a time when the respondent was holding court in Washington county, at a point quite distant from the capital of the state. Justice Libbey had held the court at Augusta for nearly the whole term; and the clerk, in making up the record, omitted to state that it was Justice Danforth who presided on the last day, when the judgment in this case was rendered. Before the record was corrected, the bill of complaint was filed in this case; but, at the August term, 1877, of that court, holden at the same place, the following proceedings were had, to wit: "And now, on inspection of the records of this court, in this county, for the March term thereof, 1876, it appearing that an error exists in said records, in that it appears that Artemas Libbey, a justice of said court, presided on the last day of said March term, 1876, the day of the rendition of judgments at said term, when in fact Charles Danforth, justice, presided; wherefore it is ordered that the clerk amend said records by inserting the following words in the caption thereof, to wit: 'and by the Hon. Charles Danforth, a justice of said court, on the forty-second and last day of the term.'" Power to make that correction was clearly vested in the court, as appears by the authorities referred to, and by many others which might be cited. People v. McDonald, 1 Cow. 189; Buckingham v. Dickinson, 54 N. Y. 682; Palmer v. Lawrence, 5 N. Y. 455; Bank v. Wistard, 3 Pet. [28 U. S.] 431; Fay v. Wenzell, 8 Cush. 317. Nothing can be plainer in legal decision than the proposition that it was entirely competent for the court to make the said correction, and if so, all will agree that justice and truth required that it should be done.

Nor is there the slightest foundation for the second charge, or for any imputation of unfairness, breach of agreement, deception, or attempt to mislead the complainant, on the part of the respondent. Her counsel called upon the respondent for the purpose of adjusting the matter, and they mutually fixed a day when they would meet to transact the business; and when the day came, they met, and the respondent received the money due, and delivered his deed in due form and duly executed, to her attorney, conveying all the right he acquired under

the sheriff's deed to the complainant. Whether she has ever accepted it or not does not appear, nor is it of any importance to inquire, as it is clear that she can have it whenever she pleases.

Suggestion is made that the respondent is not entitled to costs, because the record had not been corrected when the bill of complaint was filed; but the court, both judges concurring, is unhesitatingly of a different opinion. Even if the record itself did not suggest the error, it is plain that, if counsel had seen fit to make any inquiry upon the subject, they would readily have ascertained that the respondent was not presiding when the judgment was rendered.

Decree for the respondent that the bill of complaint be dismissed, with costs.