Argued December 1, affirmed December 15, 1914. On rehearing former opinion adhered to March 30, 1915.

## STATE *v.* DONAHUE.

(144 Pac. 755; 147 Pac. 548.)

**Larceny—Nature of Offense—Trespass on Land—Cutting Timber—Statutes—Construction.**

1. Section 1984, L. O. L., provides that if any person shall willfully cut down, destroy or injure any standing or growing tree on the land of another, or shall willfully take or remove from any such lands any timber or wood previously cut or severed from the same, he shall on conviction be punished, etc., and Section 1947 provides that if any person shall steal any goods or chattels, the property of another, he shall be deemed guilty of larceny. *Held,* that the two offenses are distinct, and that the evidence which would support a conviction for violation of one section would not necessarily show that the party was guilty of the other, the willful cutting of timber on the land of another or its willful removal being taken out of the general

class or larceny and made in substance an independent offense; but the felling of timber and its subsequent asportation, whether on the land of another or elsewhere, if accompanied by a larcenous intent and not alone willful, is still larceny notwithstanding the trespass section.

**Indictment and Information—Nature of Charge—Particular Statute—Duplicity.**

2. In a prosecution for a statutory offense, it is no defense to an indictment under one statute that defendant may also be punished under another.

**Criminal Law—Trial—Requisites—Arraignment.**

3. It is essential to a conviction of a felony that defendant be arraigned and that he plead or refuse to plead.

[As to necessity for arraignment in criminal case, see note in Ann. Cas. 1915C, 1073.]

**Criminal Law—Judgment—Record Entries—Arraignment—Correction Nunc Pro Tunc.**

4. Where accused was actually arraigned and pleaded not guilty, but by misprision of the clerk the record failed to show the same, the court at a subsequent term was authorized to correct the record so as to show the fact by a *nunc pro tunc* order based on affidavits of persons who were present and saw defendant arraigned and heard him plead not guilty, offered to refresh the court's recollection.

**Larceny—Property Annexed to Freehold—"Chattel."**

5. By the act of severing property annexed to the freehold, the wrongdoer converts the property into a chattel, and if he then removes the severed property with a felonious intent, he is guilty of larceny whatever dispatch may have been employed in such removal.

[As to larceny, what constitutes, see notes in 57 Am. Dec. 271; 88 Am. St. Rep. 559.]

**Criminal Law—Trial—Instructions—Reasonable Doubt.**

6. Under Section 139, L. O. L., providing that the court shall charge the jury concerning all matters of law which it thinks necessary for the jury's information in giving a verdict, the court could not be put in error for omitting to charge on the presumption of innocence, in the absence of a request to do so.

From Multnomah: James U. Campbell, Judge.

Department 2. Statement by Mr. Justice McNary.

The defendant, J. M. Donahue, was indicted, tried and convicted of the theft of certain sawlogs, and from the judgment and sentence imposed, appeals.

Affirmed. Adhered to on Rehearing.

For appellant there was a brief over the names of *Mr. Enoch B. Dufur* and *Mr. W. P. Myers,* with an oral argument by *Mr. Dufur.*

For the State there was a brief over the names of *Mr. Edmund B. Tongue,* District Attorney, and *Mr. Thomas H. Tongue, Jr.,* Deputy District Attorney, with an oral argument by *Mr. Edmund B. Tongue.*

MR. JUSTICE MCNARY delivered the opinion of the court.

On the 15th day of September, 1913, the grand jury of Washington County accused defendant of the theft of 500,000 feet of sawlogs. The charging part of the indictment follows:

"That the defendant, J. M. Donahue, upon the 1st day of May, A. D. 1913, in the said county of Washington, State of Oregon, then and there being, did then and there willfully and unlawfully and feloniously take, steal and carry away 500,000 feet of sawlogs of the value of seven hundred and fifty dollars ($750.00), the personal property of Elizabeth Freeman."

Conviction followed on the 24th day of April, 1914. On May 2, 1914, counsel for defendant moved for an arrest of judgment upon the assumption that the indictment did not state facts sufficient to constitute an offense and that the evidence failed to establish the commission of a crime. Contemporaneously, the Circuit Court disallowed the motion and pronounced judgment that defendant should be confined in the penitentiary from one to ten years and that defendant be paroled on condition that he pay for the timber by him actually felled and removed. On the 20th day of July following, defendant, through his counsel, filed a motion to vacate the judgment of conviction for the reason

that the "record failed to show that the defendant had ever been arraigned or entered his plea." This motion, too, was overruled on July 30th. The same day the district attorney moved the court for an order *nunc pro tunc* of the arraignment and plea of defendant as of April 24th. At a time coexistent with the application of the district attorney, and in the absence of defendant, the court made the order upon the statement embodied in three separate affidavits that the defendant was duly arraigned, and entered a plea of not guilty.

1. The first assignment of error challenges the sufficiency of the indictment by asserting that it is so indefinite that it is impossible to tell whether the language employed brings the crime within the law of larceny as fixed by Section 1947, L. O. L., or the law of trespass on lands of another as defined by Section 1984, L. O. L.:

"If any person shall willfully cut down, destroy or injure any standing or growing tree upon the lands of another, or shall willfully take or remove from any such lands any timber or wood previously cut or severed from the same, or shall willfully dig, take, quarry, or remove from any such lands any mineral, earth, or stone, such person, upon conviction thereof, shall be punished by imprisonment in the county jail not less than one month nor more than one year, or by fine not less than $50 nor more than $1,000."

The learned district attorney proceded upon the hypothesis that the felling of timber upon the land of another, cutting the timber into sawlogs, and removing the logs so felled and sawed, constituted larceny as defined by Section 1947, L. O. L.:

"If any person shall steal any goods or chattels, or any government note, bank note, promissory note, bill of exchange, bond, or any other thing in action, or any book of accounts or order or certificate concerning

money due or to become due or goods to be delivered, or any deed or writing containing a conveyance of land or any interest therein, or any bill of sale or writing containing a conveyance of goods or chattels, or any interest therein or any valuable contract in force, or any receipt, release, or defeasance, or any writ, process, or public record, or any railroad, railway, steamboat, or steamship passenger ticket or other evidence of the right of a passenger to transportation, which is the property of another, such person shall be deemed guilty of larceny, and upon conviction thereof, if the property stolen shall exceed in value $35.00, shall be punished by imprisonment in the penitentiary not less than one nor more than ten years; but if the property stolen shall not exceed the value of $35, such person, upon conviction thereof, shall be punished by imprisonment in the county jail not less than one month nor more than one year, or by fine not less than $25 nor more than $100.''

Defendant's counsel ably urges that, if any offense was committed by defendant, it was not larceny, but the crime of trespass. The testimony disclosed by the bill of exceptions justifies the statement that defendant, prior to the time of the commission of the acts charged in the indictment, was operating a sawmill on lands owned by E. W. Haines adjoining the property of Elizabeth Freeman; that, after exhausting the merchantable timber upon the Haines' tract, defendant conducted some negotiations through Mr. Haines for the purchase of the timber owned by Elizabeth Freeman. While there is some conflict in the testimony concerning when the negotiations were had and how far they proceeded, yet, by its verdict, the jury determined, as a matter of fact, that defendant had no legal right to go upon the Freeman land and remove the timber therefrom. Well we might add that competent testimony was brought to the consideration of the jury which would legally sustain either a verdict of exculpation or of conviction.

2. The question first presented concerns the applicability of the statute to the facts charged. The contention of defendant is that the indictment should have been found under the trespass section of the statute and not under the larceny section. The former section does not undertake to punish a person who asports timber from places. other than upon the lands where the timber is growing or is felled. In dissimilar situations resort must be had to the section denouncing larceny. Moreover, under Section 1984 defining trespass on lands of another the act which it undertakes to forbid is done willfully, which the statute at Section 2393, L. O. L., says embraces "simply a purpose or willingness to commit the act * * and does not require any intent to violate law, to injure another or to acquire any advantage"; whereas, in the section defining larceny, an intent by which the offense is committed is an essential element. Therefore, in our opinion, the crime of larceny and the crime of trespass on the land of another are entirely separate and distinct offenses, and the evidence which would support a conviction for a violation of one section would not necessarily show the party accused as guilty of the other. It may be said that this case falls within the provisions of said Section 1984 because it refers particularly to the cutting or removing of timber on the land of another, and for that reason it excludes all other punishments for that offense. That idea would be indisputable if the commission of the acts about which complaint is made were identical in measure with the statute making the transaction punishable. Then the special statute would inevitably operate to limit the effect and force of a general act comprehending the unlawful transaction. The willful cutting of timber upon the land of another or its willful removal is taken out of the general class of lar-

ceny and made in substance an independent offense, but the felling of timber and its subsequent asportation, whether upon the land of another or elsewhere, if accompanied by a larcenous intent and not alone willfully, is still within the pale of the statute defining larceny. Resting within the province of the jury was the decision of this question. There was some testimony given to the jury from which a criminal intent was inferable, and for that account the section of the statute defining larceny was properly used as the tape by which to measure the presence or absence of that intent. The trial court did not, we conclude, err in holding that the defendant was prosecuted under an appropriate provision of the statute: *Woods* v. *People,* 222 Ill. 293 (78 N. E. 607, 113 Am. St. Rep. 415, 6 Ann. Cas. 736, 7 L. R. A. (N. S.) 520). Besides, it is no defense to an indictment under one statute that a defendant might also be punished under another: *In re Converse,* 137 U. S. 624 (34 L. Ed. 796, 11 Sup. Ct. Rep. 191) ; *State* v. *Glenn Lumber Co.,* 83 Kan. 399 (111 Pac. 484) ; *State* v. *Gallamore,* 83 Kan. 412 (111 Pac. 472) ; *State* v. *Leonard,* 56 Wash. 83 (105 Pac. 163, 21 Ann. Cas. 69) ; 2 Bishop, New Criminal Procedure, § 612.

3. Defendant's second grievance finds its root in the trial court's action in ordering a *nunc pro tunc* entry of the arraignment and plea of defendant upon extraneous evidence supplied by three affidavits, wherein each affiant affirms that he was present in the courtroom at the time the charge against defendant was called for trial and saw him arraigned and heard him enter a plea of "not guilty" to the indictment. The record discloses that defendant made no objection to the irregularity complained of until after verdict, nor that he was in any manner prejudiced thereby. Irrespective of the doctrine in other jurisdictions, this court

has announced the rule that those steps which the law prescribed cannot be dispensed with and that it is essential to a conviction of a felony that defendant be arraigned and that he plead or refuse to plead: *State v. Walton,* 50 Or. 142 (91 Pac. 490, 13 L. R. A. (N. S.) 811); *State v. Walton,* 51 Or. 574 (91 Pac. 495.)

4. Consequently, we must consider the value of the *nunc pro tunc* entry. Section 2807, L. O. L., provides that the terms of the Circuit Court in Washington County shall be held on the third Monday in March, the third Monday in July, and the fourth Monday in November of each year. Therefore, it will be observed that the application for the order and its allowance was made at a term subsequent to the one at which the defendant was tried and convicted. There is much authority in support of the rule that a judgment can be amended or corrected at a subsequent term only when there is sufficient record evidence, or evidence *quasi* record to sustain the amendment, and that evidence *dehors* the record cannot be received for this purpose: 23 Cyc. 879. Yet, as stated by Mr. Justice H. J. Bean in *Grover v. Hawthorne,* 62 Or. 65 (121 Pac. 806):

"There are many cases which hold that an entry *nunc pro tunc* may be ordered on any evidence that is sufficient and satisfactory, whether it be parol or otherwise."

It is a part of the ordinary duty of the clerk of the Circuit Court to note in the record of a trial the essential proceedings, and, if he fails through inadvertence or negligence to make a memorial of that which actually occurs, we think, on principle, it is competent for a court of record under its general inherent authority to correct the mistake and supply the defect of its recording officer so as to have the record conform to the actual facts and truth of the case. This may be

done at any time; equally as well after as during the term. While great caution should be exercised by the trial court if his action is merely based on memory, yet that alone would not deprive him of jurisdiction to make the order, and, likewise, the court may make such amendment upon any competent legal evidence, though foreign to the record. In this case, the Circuit Court brought to the assistance of his memory the affidavits of three responsible persons who bore witness that they were present during the progress of the trial of defendant and saw him arraigned and heard him plead not guilty to the indictment. We believe the doctrine best suited to the proper administration of justice is that if the court has performed its whole duty correctly, but the recording officer has erred in making up a proper or full record, the court may, in its discretion, cause the record at any time to be amended or corrected so as to have it declare the whole truth: 23 Cyc. 864; *Doane* v. *Glenn,* 1 Colo. 454; *Burson* v. *Blair,* 12 Ind. 371; *Arrington* v. *Conrey et al.,* 17 Ark. 100; *Stockdale* v. *Johnson,* 14 Iowa, 179; *Gilman* v. *Libbey,* 4 Cliff. 447 (Fed. Cas. No. 5443.) Many other authorities might be cited showing that amendments of the character presented by this case are matters of discretion, but we deem it unnecessary.

5. Counsel for defendant pleads error upon the part of the court in charging the jury that:

"Now, it is also necessary for me to define to you what the meaning of the words 'goods and chattels' is. Chattels in the ordinary sense of the word is any property that is movable; not so connected with the ground as to become a part of the ground or the realty. A growing tree is real estate and is not a chattel, but the minute a growing tree becomes disconnected with the ground, is thrown down, then it becomes a chattel.

And while the owner of the property as long as the tree was growing only owned real estate, if without severing her ownership of the real estate the tree is cut down without her consent, or with her consent, it then becomes a chattel, and capable of asportation, and the person who converts real property into personal property and then carries it away, if he does it unlawfully and wrongfully would be guilty of larceny. A tree, when it is cut from the stump, cut into these logs, becomes a chattel, and the party who would steal that, carry it away secretly without the knowledge or consent of the owner, would be guilty of larceny under the statutes of this state.''

As an abstract proposition of law, we believe the court advised the jury correctly. Accepted by all the authorities is the concept that larceny is predicable of goods personal and not of chattels real; that is, of such as are annexed to the freehold. Resting in the mind of our legal ancestors was the notion that a period of time varying in extent must intervene between the severance of the thing from the soil and its asportation; in fact, the application of the doctrine at times is so subtle as to require much mental gymnastics. The simpler, more modern, and better doctrine, we think, is found in those cases which hold that by the act of severance the wrongdoer converts the property into a chattel, and if he then removes the severed property with a felonious intent he is guilty of larceny, whatever dispatch may have been employed by the thief in the removal: Bishop on Criminal Law (7 ed.), § 655; *State* v. *Parker,* 34 Ark. 158 (36 Am. Rep. 5) ; *Harberger* v. *State,* 4 Tex. App. 26 (30 Am. Rep. 157) ; 1 Wharton, Criminal Law (11 ed.), pp. 13, 14; *Bell* v. *State,* 4 Baxt. (Tenn.) 426; *State* v. *Moore,* 33 N. C. 160 (53 Am. Dec. 401.)

6. The next assignment of error is founded upon the court's failure to instruct the jury that in criminal

cases the law presumes the defendant to be innocent of the crime charged, and that this presumption follows him throughout the trial and until the jury are convinced beyond a reasonable doubt of the guilt of the defendant. No request was made by defendant for such instruction, and for that reason this court, many years ago, established and has since followed the rule that no error is assignable. The duty of the trial judge in this respect is set forth at Section 139, L. O. L.:

"In charging the jury, the court shall state to them all matters of law which it thinks necessary for their information in giving their verdict, but it shall not present the facts of the case, but shall inform the jury that they are the exclusive judges of all questions of fact."

In fairness to the trial judge defendant should, if he is not satisfied with the charge as delivered by the court, submit such instructions as he may desire with a request that they be given. Omitting to do this, it is not reversible error for the trial court to fail to give particular instructions: *Page* v. *Finley,* 8 Or. 45; *Kearney* v. *Snodgrass,* 12 Or. 311 (7 Pac. 309); *State* v. *Foot You,* 24 Or. 61 (32 Pac. 1031, 33 Pac. 537); *State* v. *Brown,* 28 Or. 148 (41 Pac. 1042); *State* v. *Magers,* 36 Or. 51 (58 Pac. 892); *Smitson* v. *Southern Pac. Co.,* 37 Or. 89 (60 Pac. 907); *Baker County* v. *Huntington,* 48 Or. 600 (87 Pac. 1036, 89 Pac. 144.)

So believing that no error was committed in the trial of the case, the judgment is affirmed.

AFFIRMED.     APPROVED ON REHEARING.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE BEAN concur.

Former opinion adhered to March 30, 1915.

ON REHEARING.

(147 Pac. 548.)

*Messrs. Dufur & Myers,* for the petition, with an oral argument by *Mr. Enoch B. Dufur.*

*Mr. Edmund B. Tongue,* District Attorney, *Mr. George M. Brown,* Attorney General, and *Mr. Thomas H. Tongue, Jr., contra,* with oral arguments by *Mr. Edmund B. Tongue* and *Mr. George M. Brown.*

MR. JUSTICE McBRIDE delivered the opinion of the court.

Upon this rehearing we find no reason to recede from the former opinion. The first contention is that this court erred in the original opinion in holding that the order requiring a record of the defendant's plea of not guilty to be entered *nunc pro tunc* was properly made. In addition to the authorities cited in the original opinion sustaining the conclusions there announced upon this question, we here cite *In re Wight,* 134 U. S. 136 (33 L. Ed. 865, 10 Sup. Ct. Rep. 487), where the court, discussing the authority of the lower court to make an entry *nunc pro tunc* in the absence of some memorandum of what had actually occurred, says:

"We are satisfied, however, upon an examination of the authorities, that this restriction upon the power of the court does not exist."

In *Bilansky* v. *State,* 3 Minn. 427 (Gil. 313), the court, passing upon the right of the lower court to enter an order *nunc pro tunc* not based upon any written memorandum on file, observes:

"But when the facts stand undisputed, and the objection is based upon the technical point alone that the term has passed at which the record was made up, it would be doing violence to the spirit which pervades the administration of justice in the present age, to sustain it."

In the case at bar the actual fact that the defendant was arraigned and entered his plea of not guilty is not disputed by any affidavit or other evidence, and is conclusively shown by the affidavits of several reputable citizens who were present when the arraignment was made and the plea of not guilty entered. It is evident that Section 1984, L. O. L., was not intended to cover cases of felonious taking of logs or timber, but only cases of willful trespass, and taking where no felonious intent existed. It would furnish a very inadequate protection in cases where an irresponsible person might steal thousands of dollars worth of sawlogs and escape with the maximum fine of $1,000. The legislature never contemplated such an absurdity.

Other objections to rulings and remarks of the trial judge are urged, but they were not excepted to on the trial, and, for the reasons stated in the original opinion, cannot be considered here.

We adhere to our original opinion.

AFFIRMED.  APPROVED ON REHEARING.

MR. JUSTICE HARRIS took no part in the consideration of this case.