IN THE

# SUPREME COURT

OF

# OREGON.

Argued June 23, affirmed September 27, 1921, rehearing denied
March 28, rehearing denied April 27, 1922.

## STATE v. ROWEN ET AL.

(200 Pac. 901.)

**Forgery — Indictment and Information — Allegation Held Sufficient
as to Forgery of Instrument.**

1. Where indictment under Section 1996, Or. L., plainly charged
that defendants, acting together unlawfully, willfully, knowingly
and fraudulently, and with intent to injure and defraud, did forge
and knowingly utter and publish as true and genuine an instrument
set forth in the indictment, it was not necessary to further proceed
to allege that the deed was forged, and was not true and genuine,
and such an allegation would be surplusage.

**Indictment and Information—Forging and Uttering Joined in
Indictment.**

2. An allegation of forging and uttering may be joined in an
indictment under Section 1996, Or. L.

**Indictment and Information—Several Acts Charged Conjunctively
as One Offense.**

3. Where several acts are enumerated alternatively in a statute,
the doing of each one being prohibited under a given penalty, they
may be charged · conjunctively as one offense when not repugnant
to each other.

**Forgery—Unnecessary to Charge That Defendant Forged Name of
Person.**

4. . It is not essential that an indictment for forgery charge
that the defendant forged the name of the person whose signature
purports to be signed to the instrument, since an allegation that
an instrument is forged shows that every part of such document
is false, and not true and genuine.

---

2. Joinder of counts for forgery and uttering forged instrument,
see note in 21 **Ann. Cas.** 257.

**Forgery—Criticism of Indictment Held Without Merit.**

5. Criticism that words "unlawfully, willfully, knowingly, and fraudulently" within an indictment for forgery did not help the indictment for the reason that their use was confined entirely to an allegation of conspiracy, and that they might modify either prior or following words, *held* without merit.

**Forgery—Held Competent Under Indictment to Show Forgery of Deed Before Same was Recorded.**

6. Where indictment for forgery set out a deed which contained certificate of recorder that it was filed, there was no merit in contention that it was incompetent to show the forgery of the deed before it was recorded by reason of the fact that the indictment, as a matter of exactness in copying the instrument, did not state that the notation of the recorder was indorsed thereon.

**Criminal Law—Certified Copies of Recorded Forged Instrument Admissible.**

7. In a prosecution for forgery of a deed, it was proper to admit in evidence certified copies of the record of the deed, without accounting for the original instrument or giving notice to the defendant to produce it, under Section 9877, Or. L.

**Criminal Law—Weight of Evidence for Jury.**

8. The weight of testimony was a matter for the consideration of the jury, and is not for the Supreme Court.

From Josephine: F. M. CALKINS, Judge.

Department 2.

The defendant, R. J. Rowen, appeals from a judgment of conviction for the crime of forgery rendered in the Circuit Court for Josephine County. The charging part of the indictment was substantially as follows:

"R. J. Rowen and Paul Sands are accused by the Grand Jury of the County of Josephine, State of Oregon, by this indictment, of the crime of forgery committed as follows:

"The said R. J. Rowen and Paul Sands, did on the second day of April, 1917, in the County of Josephine, State of Oregon, then and there being, and then and there acting, conspiring and confederating together unlawfully, willfully, knowingly and fraudulently,

---

7. Secondary evidence of forged instrument in prosecution for forgery, see note in **Ann. Cas.** 1912A, 916.

and with intent to injure and defraud, did then and there forge and knowingly utter and publish as true and genuine, an instrument in writing, which instrument is in words and figures as follows, to wit: * * "

Here follows a copy of a purported quitclaim deed from Harry W. Kelly to Paul Sands, dated the twenty-ninth day of August, 1916, and apparently executed by Harry W. Kelly in the presence of C. W. Green and Atkin Wilson, as witnesses, with a certificate of acknowledgment by Harry W. Kelly on the last-named date before W. R. Nipper, notary public for Oregon, and also the following notation thereon:

"Filed and recorded April 2, 1917, at 4:06 P. M. E. L. Coburn, County Clerk, by Vina Opdyke, Deputy Clerk."

The indictment then proceeds thus:

"That the said instrument, to wit: a quitclaim deed, was made and executed and uttered as aforesaid by the said R. J. Rowen and Paul Sands with the intent to injure and defraud, contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon.

"Dated at Grants Pass in the County and State aforesaid, this —— day of April, A. D. 1919."

A trial before a jury was had on January 13, 1920.

An outline of the history of the case is about as follows: Paul Sands and Harry W. Kelly located the Floriday mining claim on March 10, 1916. The claim was down the Illinois River from Selma, and then fourteen miles from a wagon road. The mine was leased by Paul Sands and Harry W. Kelly to A. E. Wiltsee on April 21, 1916, for a term of four years, Wiltsee agreeing to pay certain royalties on the Chrome ore shipped from the mine. On February 8, 1917, Paul Sands executed a quitclaim deed of all his interest in the Floriday mining claim to H. E. Shackle

of Arizona, which deed was duly recorded. H. E. Shackle on April 2, 1917, executed a deed of the Floriday mining claim and other mining claims to defendant, R. J. Rowen, which was filed for record on the ninth day of that month. A copy of an agreement of lease with the privilege of purchase of the property, made April 27, 1917, between R. J. Rowen, as lessor, and Clarence M. Oddie of San Francisco, California, as lessee, is exhibited in evidence. The agreement provides for developing the mining claim. Thereafter Rowan directed that certain funds which he was to receive under the Oddie contract were to be given to J. T. Gilmore and W. E. Gilmore. It appears that a deed from R. J. Rowen to J. T. Gilmore of an undivided one-third interest in certain mines, including the Floriday mining claim, dated January 18, 1918, was recorded January 19th of that year. Rowen, on April 21, 1917, obtained a deed of the Floriday claim from E. A. Wiltsee.

Immediately after the execution of the lease of the mine to Wiltsee, Harry W. Kelly left the immediate vicinity, and was engaged in prospecting on Williams creek, directly over the mountains about thirty miles, and about seventy-five miles by road from the Floriday claim. Kelly never returned to this mine during a period of seventeen months. He was a young man twenty-four years of age, and had but little business experience. In June, 1917, he came to Grants Pass and made inquiry concerning the Chrome properties down the Illinois river, but could learn nothing of any road being built. He then went to Glendale, Oregon, where he registered for the draft, and from there to Yoncalla, Oregon. Kelly returned to Grants Pass in October, 1918, and soon thereafter discovered that a

deed to the Floriday mining claim had been recorded. The deed had been presented to the county clerk for record by one J. T. Gilmore, April 2, 1917, and after being recorded and compared was delivered by the clerk to the same person. Kelly testified that he never signed or acknowledged the deed; and that the only instrument relating to the mine which he executed was the lease to Wiltsee.

Mr. W. R. Nipper, notary public for Oregon, residing at Grants Pass and having an office in that city, testified to the effect that the defendant Rowen, in 1916, was frequently in and about his office and was there several times during his absence; that he kept his notarial seal setting on his desk; that he first met Harry W. Kelly in the fall or winter of 1918, fixing the date with reference to the trial of a certain civil case; that he never took the acknowledgment of Harry W. Kelly to a quitclaim deed; that neither Atkin Wilson nor C. W. Green ever signed his name as a witness to a quitclaim deed in his presence; that he knew a man by the name of Austin Wilson, but did not know a man by the name of Atkin Wilson; that he never knew a man around his office by the name of C. W. Green; that he had no knowledge of the execution of the deed, a copy of which is set forth in the indictment, and that he never certified to the acknowledgment of such a deed.

J. C. Eads, who had been employed by Wiltsee and Scott, also having other claims on the Illinois River, testified, in substance, that he was familiar with the mining district in which the Floriday mine was situated; that he was in the Selma Hotel on March 27, 1917, and overheard a conversation between defendant Rowen in which, to use his language, Rowen "was wanting to get Sands to give him a deed to Kelly's

half interest in the Floriday claim." He testified to Sands' saying to defendant Rowen that he only owned a half interest and refusing to sign Kelly's name to the deed; and that Rowen later said "he would have a deed with Kelly's name on it so as to go ahead and do business." At this time, as claimed by the prosecution, young men of Kelly's age who were physically fit had been or were being drafted into the United States military or naval service. Kelly had not been heard of for nearly a year by those interested in the Chrome operations on the Illinois River. The claim is that the quitclaim deed was of the value of about $25,000, with a probability that a like amount would be paid in royalties from the sale of the Chrome ore.

George S. Barton, a witness for the state, testified to the purport that in July, 1917, he had a conversation with defendant Rowen concerning the Kelly interests, and that Rowen told him that "he fixed it up, and went on to recite about Kelly not being in the country and never coming back to this country, and didn't state how he done it or anything of the kind." It appears the reason for this conversation was that Barton and Rowen were interested in several mining properties upon which they were sharing commissions equally derived from sales. It is the theory of the state that by recording the deed alleged to have been forged the record would show title to the mining claim in defendant R. J. Rowen and therefore inure to his benefit.

At the close of the state's case counsel for defendant moved the court to direct the jury to return a verdict of not guilty. The state offered, and there was admitted in evidence over the objection of the defendant, a duly certified copy of a recorded instrument, being the instrument which was set forth in the indict-

ment. Objection to the exhibit was made by counsel for defendant for the reason that no proof could properly be offered under the terms of the indictment of anything except the forgery of a deed that was already recorded. The state offered a duly certified copy of the location of the Floriday mining claim which was described in the alleged forged deed. This exhibit was admitted over defendant's objection that it constituted variance between the indictment and the proof. The same objection was made to the introduction of a certified copy of a lease of the Floriday mining claim from Paul Sands and Harry W. Kelly to E. A. Wiltsee. Objection was made to testimony of Harry W. Kelly that he never signed such a deed, for the reason that the defendant was charged with the crime of having forged a public document and what happened prior to that time was incompetent, irrelevant and immaterial. The objection was overruled, exceptions duly saved, and an assignment of error is predicated upon such ruling. Similar objections and exceptions were made to the introduction of other testimony relating to the deed in question. Like objections were made to the introduction of duly certified copies of other conveyances mentioned in the above statement, and exceptions duly saved to the ruling of the court admitting the same.     AFFIRMED.    REHEARING DENIED.

For appellant there was a brief and oral argument by *Mr. O. S. Blanchard.*

For respondent there was a brief and oral argument by *Mr. W. T. Miller.*

BEAN, J.—Briefly stated, the claim of the defendant, R. J. Rowen, is that the indictment charges no crime; that the deed set forth in the indictment is a recorded deed; that anything antedating the date of filing the recorded deed is immaterial and incompetent; that none of the exhibits offered in evidence were admissible because they antedated the alleged forged recorded instrument; that the court should have sustained the motion for a directed verdict in favor of the defendant; and that no testimony was admissible, especially as to the certified copy of the deed claimed to have been forged, until the original forged instrument was accounted for.

It goes without saying that if the indictment does not charge the defendant with the commission of a crime, the judgment should be reversed. Section 1996, Or. L., provides that:

"If any person shall, with intent to injure or defraud anyone, falsely make, alter, forge, or counterfeit any public record whatever, or any * * deed * * ; or shall, with such intent, knowingly utter or publish as true or genuine any such false, altered, forged, or counterfeited record, writing, instrument, or matter whatever, such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary for not less than two nor more than twenty years."

Counsel for defendant contends that the allegations in the indictment that the defendants did forge and knowingly utter and publish as true and genuine the instrument set forth therein should be followed with the allegation that the said instrument was not true and genuine, but was a false and forged instrument.

1. The indictment plainly charges that the defendants acting together unlawfully, willfully, knowingly and fraudulently, and with intent to injure and de-

fraud did forge and knowingly utter and publish as true and genuine the instrument set forth in the indictment. After an allegation that the defendants forged the deed, it would be mere surplusage to proceed to allege that the deed was forged or was not true and genuine. Such an allegation in effect would be a repetition, and would not add to the information furnished the defendant regarding the crime with which he was charged. Defendant contends that the two acts made punishable by Section 1996, Or. L., one forging an instrument and the other knowingly uttering and publishing as true and genuine any such false and forged instrument "could not be joined in the same allegation, nor in the same indictment." The brief of defendant then proceeds to state that the part of the statute which refers to uttering, requires that the instrument uttered shall be false, altered or forged, therefore, the necessity of a direct allegation that the instrument set out was such a false or forged instrument.

2. The first statement that the allegation of forging and uttering cannot be joined in the indictment, we do not understand to be urged. The practice is well settled to the contrary. It is claimed that under the rule announced in *People* v. *Mitchell,* 92 Cal. 590 (28 Pac. 597, 788), the allegations in regard to the two acts referred to must be entirely separate. It is apparent that the statute of California at the time of the opinion in that case was different from ours.

3. It has long been one of the general rules recognized in this state for construing indictments and informations, that where several acts are enumerated alternatively in the statute, the doing of each one being prohibited under a given penalty, they may be charged conjunctively as one offense, when not re-

pugnant to each other: *State* v. *Carr,* 6 Or. 133;
*State* v. *Bergman,* 6 Or. 341; *Cranor* v. *City of
Albany,* 43 Or. 144 (71 Pac. 1042); *State* v. *White,*
48 Or. 416 (87 Pac. 137); *State* v. *Bilyeu,* 64 Or. 177,
180 (129 Pac. 768); *State* v. *Leonard,* 73 Or. 451 (144
Pac. 113, 681); *State* v. *Dale,* 8 Or. 229; *State* v.
*Humphreys,* 43 Or. 44 (70 Pac. 824).

4. According to the form of the indictment pro-
vided for in the appendix to our Code, which is a
part of the statute, it may be alleged that a defend-
ant "forged an instrument." It is not essential, as
claimed on behalf of defendant, that the indictment
charge that the defendant forged the name of the
person whose signature purports to be signed to the
instrument. The allegation that the instrument was
forged shows that every part of such document is
false, and not true and genuine.

5. Criticism is made by the defense that the words
"unlawfully, willfully, knowingly and fraudulently,"
do not help the indictment for the reason that their
use is confined entirely to the allegation of conspir-
acy. A fair construction of the indictment is that the
defendants acting together, unlawfully, etc., forged
and knowingly uttered and published as true and
genuine the instrument set out therein. From a
grammatical or rhetorical standpoint the adverbs
quoted might be criticised as similar to squinting
clauses, as from their position they might modify
either the prior or following words. We are not
necessarily concerned with the nicety of diction em-
ployed in the indictment, but with the true intent and
legal import of the language used.

6. It is earnestly urged by counsel for the defend-
ant, that the indictment alleges the forgery of a re-
corded instrument, and that it is incompetent to show

the forgery of a deed before the same was recorded. In other words, it is urged that the charge is that the entire instrument, as a recorded instrument containing the certificate of the recorder, was forged. An examination of the charging part of the indictment discloses that it is charged that the defendant forged and uttered an instrument in writing, which instrument is in words and figures as follows, to wit: Here follows a copy of a quitclaim deed purported to be signed by Harry W. Kelly. Appended to the copy of the deed and certificate of acknowledgment thereof is a notation of the filing and recording by the county clerk. As a matter of exactness in copying the instrument it might possibly have been well to have stated that there was indorsed thereon this notation. The defendant, however, could not have been misled, or believed that the note of the filing and recording of the deed constituted a part of that instrument. The alleged spurious deed appears to have been dated August 29, 1916, and the charge does not comprehend the forgery of the record of an instrument recorded on April 2, 1917. In fact, the indictment recites that "the said instrument, to wit, a quitclaim deed, was made and executed and uttered as aforesaid by R. J. Rowen and Paul Sands with intent to injure and defraud." While the learned counsel is entitled to commendation for discerning the grounds for criticism, we cannot hold that it has the legal effect contended for.

7. It is claimed on behalf of the defendant that none of the certified copies of the record offered in evidence were admissible until the original instrument alleged to have been forged by defendant Rowen was accounted for; and if the deed in question was shown to be in the hands of, or under the control of

the defendant, sufficient notice should have been given him to produce it before a certified copy thereof could be introduced in evidence. This claim is largely based upon the opinion in the case of *State* v. *Martin,* 229 Mo. 620 (129 S. W. 881, Ann. Cas. 1912A, 908). It is shown by the opinion in that case at page 636, that under the statute of Missouri, before a certified copy of an instrument or writing conveying or affecting real estate can be read in evidence, it shall be shown to the court, by the oath or affidavit of the party wishing to use the same, or of anyone knowing the fact, that such instrument is lost, or not within the power of the party wishing to use the same. On the contrary, Section 9877, Or. L., authorizes that:

"The record of a conveyance duly recorded, or a transcript thereof duly certified by the county clerk, in whose office the same may have been recorded, may be read in evidence in any court in the state, with the like force and effect as the original conveyance; but the effect of such evidence may be rebutted by other competent testimony."

The law in this state is that the original deed properly executed and acknowledged proves itself, and the transcript from the record thereof duly certified does the same: *Marx* v. *Hanthorn,* 30 Fed. 579, 583; *Stanley* v. *Smith,* 15 Or. 505, 508 (16 Pac. 174).

The testimony in the case tended to show that the alleged forged deed was presented to the county clerk by one J. T. Gilmore, a partner of defendant Rowen in the business of dealing in mines. The county clerk, as a witness, thoroughly explained the matter of the recording, and it was shown by the testimony that the deed so presented was compared out of its regular order and handed to Mr. Gilmore and taken away by him. The whole tenor of the testimony is to the

effect that those interested in the prosecution never had possession of the alleged forged deed, and at page 26 of the transcript of the testimony, in connection with the interrogations in regard to the deed in question, counsel for defendant stated, "We can't find the deed unfortunately." The original instrument described in the indictment was therefore accounted for.

While the statute makes a certified copy of a transcript of the record of a conveyance of like force and effect as the original conveyance, it is apparent that the signature to the alleged spurious deed could have been examined and perhaps compared with an admitted signature of Kelly's, if the original could have been produced. To a certain extent only the certified copy of the record of the deed was secondary, but not in its fullest sense.

The rule that when a written instrument is in, or traced to, the possession of the opposing party, or is under his control, it is necessary to give such party notice and reasonable time before the trial within which to produce it, before secondary evidence of its contents can be received, does not require that notice be given to produce documents which are the subject of the indictment: Wharton's Criminal Evidence (9 ed.), § 212; *State* v. *Hanscom,* 28 Or. 427, 432 (43 Pac. 167, Ann. Cas. 1912A, 916, note); *McGinnis* v. *State,* 24 Ind. 500. In referring to this question Mr. Chief Justice ELLIOTT, in the latter case said: "It is, therefore, difficult to perceive what benefit could result, either to the state or the defendant, from the giving of such a notice, while to the defendant it is liable to work a positive injury, by producing an unfavorable impression against him in the minds of the jury, upon his refusal to produce it after notice."

8. The motion for a directed verdict must of necessity depend upon the competency of the certified copies of the instrument. From a careful reading of the evidence, it appears that it sustains the allegations of the indictment. The weakness of some of the testimony is the subject of argument in the brief, but that feature of the case was for the consideration of the jury, and is not for the court. The record discloses that the defendant had a fair trial. We find no error therein.

The judgment of the lower court is therefore affirmed.          AFFIRMED.    REHEARING DENIED.

BURNETT, C. J., and JOHNS and BROWN, JJ., concur.