Argued January 11, affirmed January 25, rehearing denied March 8, 1921.

## STATE *v.* SWANK.

### (195 Pac. 168.)

**Indictment and Information — Indictment, Entitled "State of Oregon," Held Sufficient.**

1. That indictment was entitled "State of Oregon v. J. S.," instead of "The State of Oregon," as provided by Section 1438, Or. L., *held* not to render it defective, in view of Section 1435.

**Criminal Law—Objections to Signature to and Indorsement on Indictment not Available, in Absence of Motion to Quash.**

2. Objections to the signature to and indorsement of an indictment are not available on appeal, in absence of motion in lower court to quash indictment, under Section 1468, Or. L.

**Forgery—Indictment Held Sufficient.**

3. Indictment charging that defendant forged note with intent to defraud, without stating how, in what manner, or wherein the note was forged, *held* sufficient, under Or. L., page 1348, form 15.

**Criminal Law—Defendant's Previous Efforts to Defraud Land Owner Admissible in Prosecution for Forgery.**

4. In prosecution for forgery of note, under Section 1996, Or. L., delivered to owner of land during consummation of land exchange transaction effected by defendant, testimony as to previous transactions between defendant and such owner, during which defendant had made an attempt to defraud the owner, *held* admissible as part of the connected and continuous transaction to show defendant's motive in delivering the forged note to such owner.

**Criminal Law—Forgery Committed in County in Which Note was Forged, and not County in Which It was Delivered.**

5. Forgery of note, under Section 1997, Or. L., was committed in the county in which defendant signed fictitious name thereto and deposited it in the postoffice, though note was delivered to defrauded person in other county, the delivery of the note constituting a separate and distinct crime of uttering, publishing, or passing a forged instrument as true and genuine under Section 1998.

**Criminal Law—Crime of Uttering Forged Instrument Committed in County in Which Instrument is Handed to Defrauded Person.**

6. Where forged instrument is mailed in one county and received in another, the venue of the offense of uttering the forged instrument, under Section 1998, Or. L., is in the latter county.

**Forgery—Evidence Held to Sustain Conviction.**

7. In prosecution for forgery of note by signing fictitious name to note delivered to land owner during consummation of land exchange transaction, evidence *held* to sustain conviction.

From Multnomah: ROBERT TUCKER, Judge.

Department 2.

The defendant was indicted, tried, and convicted of forgery, and sentenced to the penitentiary. The indictment is entitled, *"State of Oregon* v. *J. D. Swank,* Defendant," and is for violation of Section 1996, L. O. L., and charges:

"The said J. D. Swank on the 13th day of January, A. D. 1919, in the County of Multnomah and State of Oregon then and there being, did then and there unlawfully, feloniously and falsely, with intent to injure and defraud, make, forge and counterfeit a certain promissory note for the payment of money, which said false, forged and counterfeit note is, in words and figures, as follows:

" '$75.00.          Portland, Oregon, Jan. 13, 1919.

" 'Eleven months after date I promise to pay to the order of Archie L. Stephens

          " 'Seventy-five $75.00 —— Dollars.

" 'In case od suit I agree to pay attorney fees and costs, Payable at, Taft oregon.

" 'Value received.

" 'No. ——. Due Dec. 13th, 1919.

          " 'FRANK BURROW.'

contrary to the statutes."

In 1918, Archie L. Stephens, then a resident of Taft, Lincoln County, Oregon, was the owner of a homestead of 160 acres in that county, valued at about $1,500, and, desiring to sell or exchange his property, inserted an advertisement in the "Portland Oregonian," in response to which the defendant wrote him two letters from Portland and Stephens then came to Portland, and talked the matter over with defendant in his office in the Henry Building. At that time nothing more was done, and Stephens returned to his home at Taft, after which the defendant wrote him another letter, in which he offered to exchange three acres, all in cultivation, in Lane County, for the homestead. Mrs. Stephens then went to Portland, and after another talk with defendant in his office the trade was made, and he prepared two deeds for the homestead, each for eighty acres, in which the name of the grantee was left blank. Under false representations as to the Lane County acreage, Mrs. Stephens signed the deeds, not only for herself, but, as she testified:

"He told me to sign my husband's name as near like my husband's writing as I remembered it, so as to avoid any technicalities of the law in case anything should come up against it."

The deeds were never acknowledged by Mrs. Stephens, but they were delivered to the defendant, and she then received a deed purporting to have been executed by one Arthur King to the three acres of land in Lane County. At the same time she executed a note to Eva Swank for $25 as a commission. After returning home, an investigation of the Lane County acreage was made, and it was found to be worthless, and Mr. Stephens wrote the defendant that he would be held accountable for the fraud. As a result of further correspondence, it was agreed that the deed for the Lane County land should be returned and that the defendant would send a deed to five acres of land in Hood River, a note for $75, and cancel the note for the $25 commission. Mr. Stephens notified the defendant that he would accept this proposition, and returned the deed for the three acres. In a few days he received through the mail at Taft a letter, signed by the defendant, and what purported to be a deed to five acres of land in Hood River, signed by Charles J. Myers and Frieda Myers, the note for $25 commission, together with the note of Frank Burrow for $75, described in the indictment. Mr. and Mrs. Stephens never had any knowledge or information concerning any of the above-named persons except the defendant.

The state introduced evidence at the trial tending to show that Frank Burrow the alleged maker of the note for $75, was a fictitious person, that it was a forgery, and had been prepared by the same person on the same typewriter as the note for $25 commission, which was prepared and typewritten by the defendant in his office in Portland. No motion, pleading, or demurrer was directed to or filed against the

indictment, and the defendant did not offer any evidence at the trial. When the state rested, the defendant moved the court for a directed verdict. After the jury had returned a verdict of guilty as charged, the defendant moved to set it aside. Both of these motions were overruled.

From the conviction and sentence the defendant appeals, assigning as error that the indictment does not conform to the statute in the title, "Signing and Indorsement," and that it does not state facts sufficient to constitute a crime; that there was error in admitting evidence of the land transactions by the defendant with the Stephens' and others, in the receipt of certain letters and documents as exhibits, in the admission of the evidence of Wood as a handwriting expert, in the failure to direct the jury to return a verdict of not guilty, in the trial of the case in Multnomah County, and in the refusal to dismiss for want of jurisdiction. There are no exceptions to the giving or refusal of instructions.     AFFIRMED.

For appellant there was a brief over the names of *Mr. John A. Jeffrey* and *Mr. Fred W. Bronn,* with an oral argument by *Mr. Jeffrey.*

For the State there was a brief over the names of *Mr. Walter H. Evans,* District Attorney, and *Mr. E. F. Bernard,* Deputy District Attorney, with an oral argument by *Mr. Bernard.*

JOHNS, J.—1. It is objected that the indictment is entitled "State of Oregon," instead of "The State of Oregon," as Section 1438, Or. L., provides. In such a matter it is better and safer pleading to technically follow the statute, but here the objection

is one of form and not of substance. To the average person there is no difference in the meaning of the words ''The State of Oregon'' and ''State of Oregon.'' Both expressions convey the same meaning. Section 1435, Or. L., enacts that:

''All the forms of pleading in criminal actions heretofore existing are abolished; and hereafter, the forms of pleading, and the rules by which the sufficiency of pleadings is to be determined, are those prescribed by this Code.''

In *State* v. *Dougherty,* 4 Or. 200, 203, this court says:

''It clearly appears to have been the purpose of our legislature to simplify the old common-law system of criminal jurisprudence, by divesting it of many of its technical requirements, such as do not appear to affect the substantial rights of the accused.''

2. There is no merit in the objection. It is claimed that the indictment should ''be signed by the district attorney and indorsed on its face 'a true bill' '' by the foreman, ''and not merely on the outside, which is no part of the indictment.'' An indictment signed by the district attorney through a deputy was sustained in *State* v. *Guglielmo,* 46 Or. 250 (79 Pac. 577, 80 Pac. 103, 7 Ann. Cas. 976, 69 L. R. A. 466). There, before the arraignment, a motion was filed to quash the indictment, for the reason that it had been prepared and filed by a deputy district attorney. It was held that courts would take judicial notice of the appointment and scope of authority of their officers, including deputies, and that a motion to set aside an indictment upon the ground that it was not found indorsed, or presented as required by law was insufficient to challenge the appointment of the deputy dis-

trict attorney who prepared and filed the information. In the instant case no motion of any kind was ever filed. Section 1468, Or. L., enacts:

"If the defendant do not require time, as provided in the last section, or if he do, then on the next day, or at such further day as the court may have allowed him, he may, in answer to the arraignment, either move the court to set aside the indictment, or he may demur or plead thereto."

Construing this section, *State* v. *Smith,* 33 Or. 483 (55 Pac. 534), holds:

"Where the defendant has resorted to the demurrer, without filing his motion to set aside within the time allowed by the court to answer the indictment, he is thereafter precluded from taking the objection for which the motion is otherwise appropriate. This seems to be a plain rule of the statute, and we are not at liberty to depart from it until the legislature has prescribed another."

Section 1468 has never been changed and remains the same as when the opinion was written.

3. The defendant contends that the indictment does not state facts sufficient to constitute a crime, because it does not state the reasons or manner or wherein the note is forged. It is true that the indictment does not allege how, in what manner, or wherein the note was forged, but the note is copied in full in the indictment. Under a like statute that identical question is decided in *People* v. *Hoyt,* 145 App. Div. 695 (130 N. Y. Supp. 505, 508, 509), which was for the forgery of a deed, and the indictment was drawn in the same manner as here, and it was there held that:

"The verb 'forge' in law has a clearly defined meaning. * * The act constituting the crime in the present case is the forging of the deed set forth in

99 Or.—37

the indictment—the making of the false instrument
with intent to defraud. The act constituting the crime
is therefore clearly charged by simply saying that
the defendant forged the deed set forth with intent
to defraud, and it was unnecessary to state how such
forgery was committed, whether by pen or pencil or
printing or by falsely making or counterfeiting any
of the various signatures, or altering, or erasing, or
obliterating, or piecing together parts of genuine in-
struments. * * All precedents and all authorities
sustain the proposition that the particular manner in
which the forgery is committed need not be stated in
an indictment, but that the act constituting the crime
is sufficiently pleaded by alleging that the instru-
ment set forth was forged. * * Our conclusion from
the authorities is that an allegation that an ac-
cused feloniously forged an instrument prohibited by
the statute with intent to defraud is a sufficient alle-
gation of the act constituting the crime. The pres-
ent indictment set forth that the defendant forged a
deed, and the law specifies that the forging of a deed
as an entirety shall constitute the crime of forgery
in the first degree.''

In *State* v. *Greenwood,* 76 Minn. 211 (78 N. W.
1042, 1117, 77 Am. St. Rep. 632), it is held:

''An indictment which charges that on a certain
day and at a certain place the defendant, with intent
to defraud, did then and there feloniously forge a
certain promissory note, of the tenor following, and
then sets out in the indictment the note in full, states
facts sufficient to constitute a public offense in plain
and concise language, and sufficiently informs the de-
fendant of the nature and cause of the accusation
against him, and the word 'forge' as used in said in-
dictment, is not a mere legal conclusion.''

Again, in the instant case the indictment substan-
tially follows forms No. 15, 1 Or. L., page 1348, ''In
an indictment for forgery.'' That form does not
provide that the indictment shall point out or specify

how or in what manner the forgery was committed. As drawn it is sufficient to charge the crime of forgery.

4. It is further contended that the crime was not committed in Multnomah County and that evidence of previous transactions between the defendant and Stephens and his wife were not admissible, and that their admission was prejudicial. In response to his advertisement in the "Oregonian" the defendant wrote a letter to Mr. Stephens, which was mailed at the postoffice at Portland and delivered at Taft. This was the inception of mutual dealings, which resulted in the forgery charge of the note for $75 against the defendant. The testimony formed connecting links of a continuous transaction, which related to and explained the mutual dealings between the defendant as one party and Stephens and his wife as the other, and which led to and explained the forging and mailing of the note. When the Lane County fraud was detected the defendant devised another scheme, to give them a deed for a five-acre tract in Hood River, in which it was agreed that defendant would surrender his note for $25 commission, and deliver another note for $75. In a few days after this proposition was accepted the defendant mailed them the Myers deed for the Hood River five-acre tract and the note for $25 commission, and the note for $75 described in the indictment, all in the same letter.

Evidence of previous transactions was not admitted for the purpose of showing that the defendant had committed other or different crimes, but as tending to show that the note for $75 was a forgery. Although it may have influenced the jury, it all grew out of and was a part of a connected and continuous

transaction, which the state had a right to prove for the purpose of showing a motive for the defendant to commit the crime. Such evidence was competent to explain the actions and conduct of the defendant, and to show why he mailed the letter containing the note for $75.

The venue was laid in Multnomah County. Defendant contends that the forgery, if any, was committed in Lincoln County. The state offered evidence tending to show, and from which the jury could find, that the note described in the indictment was prepared by the defendant on his typewriter in his office in the Henry Building in the City of Portland, and that Frank Burrow was a fictitious person; that the defendant signed the name of "Frank Burrow" to the note, and deposited it in the postoffice in the City of Portland addressed to Stephens at Taft, in Lincoln County, Oregon, who received it with the other papers in the ordinary course of mail; and that the note was made and deposited in the postoffice in Portland "with intent to injure and defraud."

Assuming such facts to be true, was the forgery consummated in Multnomah County? The defendant relies upon and cites 19 Cyc. 1391, which reads:

"If a forgery is completed in one county, defendant may be prosecuted in that county, and it is immaterial where the first step may have been taken. Jurisdiction is in the county in which defendant utters a forged instrument, notwithstanding he may have forged the instrument in another county, and where an instrument is caused to be set in circulation abroad with intent to have it presented where the forger resides, he can be convicted of uttering it at the latter place. The weight of authority is to the effect that the offense is not complete until the instrument comes to the hands of the person to whom

it is sent and that the proper place of trial is the county to which it is sent.''

The same rule is stated in 12 R. C. L. 153, which reads as follows:

"To sustain a conviction of the crime of forgery, as in other crimes, it should appear that it was committed in the county where the offense is laid; but according to the weight of authority proof of this fact is sufficiently made out to entitle the state to go to the jury, if nothing further appears than that the person charged with the offense is shown to have uttered the forged instrument in the county where the indictment is found. In other words, proof that the forged instrument was uttered by the forger in the county where the indictment was found, if unanswered, is sufficient to sustain the verdict of a jury that the crime was there committed. So, depositing a forged instrument in the mail directed to another county makes the county where the instrument was received, and not the county in which it was mailed, the place of offense of uttering it, if such offense is committed. A statute making a crime committed partly in each of two counties punishable in either does not apply to the uttering of a forged instrument by mailing it from one county to another, as no part of the offense is committed in the former.''

Section 1997, Or. L., provides:

"If any person shall, with intent to injure or defraud anyone, make, alter, forge, or counterfeit any bank bill, promissory note, draft, check, or other evidence of debt * * , such person, upon conviction thereof, shall be punished in the manner provided in Section 1996.''

Section 1998, Or. L., enacts:

"If any person shall, with intent to injure or defraud anyone, knowingly utter or publish, or pass, or tender in payment as true and genuine, any false, altered, forged, or counterfeited bill, note, draft,

check, or other evidence of debt specified in Section 1997, such person upon conviction thereof, shall be punished in the manner provided in Section 1996.''

It will thus be seen that under our statute the committing of a forgery, and the uttering, publishing or passing of a forged instrument as true and genuine, are separate and distinct crimes, and that the crime of forgery consists in the making, altering or forging of a promissory note ''with intent to injure or defraud anyone.'' In *State* v. *Wheeler*, 20 Or. 192 (25 Pac. 394, 23 Am. St. Rep. 119, 10 L. R. A. 779), this court held:

''The execution of a promissory note in the name of fictitious person, or under an assumed name, with intent to defraud is forgery.''

After quoting several definitions of the word ''forgery,'' the opinion says:

''That the essential elements of the * * crime are: (1) A false making of some instrument in writing; (2) a fraudulent intent; (3) an instrument apparently capable of effecting a fraud.''

This was approved in *State* v. *Ford*, 89 Or. 121 (172 Pac. 802). In 2 Words & Phrases, Second Series, 614, many authorities are cited as to what constituted forgery, and they all lay down the rule, in substance, that the essential ingredients of the crime are the making of some false instrument, a fraudulent intent and liability to injure another if the writing is genuine. 2 Wharton (11 ed.), Section 858, says:

''The offense is consummated by the making of a false document, on which suit might be brought, with intent to defraud, without any uttering''—citing numerous authorities.

*State* v. *Blodgett,* 143 Iowa, 578 (121 N. W. 685, 21 Ann. Cas. 231), lays down the rule that forgery and the uttering of a forged instrument are distinct offenses, and that the crime of forgery is not a degree of the crime of uttering, nor is it necessarily included therein. Fraudulent intent in the making of a forged instrument is essential to the crime of forgery, though it is not necessary to prove it to establish the crime of uttering. It also holds that:

"An acquittal of the crime of uttering a forged instrument is not a bar to prosecution for forging the same instrument."

5, 6. There is testimony from which the jury could find that Frank Burrow was a fictitious person, and that the defendant signed the name of "Frank Burrow" to the note for $75, addressed it to Stephens, and mailed it in the postoffice in the City of Portland, with the intent to injure and defraud Stephens. Assuming such facts to be true, the crime of forgery was committed in Multnomah County. Under similar statutes, there is no serious conflict in the authorities. The cases cited and relied upon by appellant are either under different statutes or founded upon indictments for the uttering of forged instruments: *State* v. *Hudson,* 13 Mont. 112 (32 Pac. 413, 19 L. R. A. 775), holds that:

"Where the forged instrument is mailed in one county and received in another, venue of the offense of uttering the forged instrument is in the latter county."

That is good law; but there the defendant was indicted for the uttering of a forged instrument, and not for its forgery, and therein lies the distinction.

Mrs. Stephens testified that the defendant prepared the note for $25 on his typewriter in his office

in the Henry Building, and that she signed it there. Defendant complains that the witness Ford, as an expert, was permitted to testify that in his opinion the note for $25 and the note for $75 were prepared by the same person on the same typewriter, and the signature of "Frank Burrow" to the latter was in the handwriting of the defendant. Wood's testimony was clear, analytical, and convincing, and the reasons for his belief were stated in concise language, from which the jury could and did find that the two notes were prepared by the same person on the same typewriter, and that the defendant forged the name of "Frank Burrow" to the note for $75. There is also competent evidence that Burrow was a fictitious person.

This is an age of typewriters, in which they are important, in many of the daily transactions. The case of *Grant* v. *Jack*, 116 Mo. 342, 346 (102 Atl. 38), decided in October, 1917, is in point and reads thus:

"And for the purpose of showing that fact we think the copy of the letter, shown to have been made on the same typewriter, was admissible in evidence for comparison with the original letter. The comparison was to be made by the jury, and it was for them, and not for the presiding Justice, to determine by the comparison if there were defects or irregularities in the typewriting of the original letter which were plainly reproduced in the typewriting of the copy."

7. It was not questioned that Ford was qualified to testify as an expert. The defendant had a fair trial, and there is ample testimony to sustain the verdict.

The judgment is affirmed.

AFFIRMED.   REHEARING DENIED.

BURNETT, C. J., and BEAN and BROWN, JJ., concur.