Argued January 30, reversed April 23, petition for rehearing
denied May 28, 1958

## HUBBARD *v.* HUBBARD
324 P. 2d 469

*Tolbert H. McCarrol*, Portland, argued the cause for appellant. With him on the briefs were Tanner & Carney, Portland.

*Gladys M. Everett*, Portland, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and LUSK, WARNER and KESTER*, Justices.

LUSK, J.

This appeal raises the question of the validity of a nunc pro tunc decree making an allowance for minor children in a divorce suit.

The parties are Caroline Hill Hubbard, the executrix of the estate of James W. Hubbard, deceased, who

---

* Resigned March 1, 1958.

was the plaintiff in the divorce suit, and Pearl Hubbard Bootsman, formerly Pearl Hubbard, the defendant in such suit. The parties will be hereinafter referred to as the executrix and the defendant.

On February 1, 1939, the court entered a decree granting the defendant a divorce upon her cross-complaint in a suit for divorce commenced by her husband, who defaulted. The defendant's cross-complaint alleged that there were two minor children of the marriage, Betty Jean and James Junior, aged respectively 13 and 11 years, and that $30 a month was a reasonable amount to be allowed her for their support. She prayed for custody of the children and the allowance of such sum for their support. On the hearing she testified that she was seeking $30 per month support money for the children, and that that amount would enable her to take care of them. The decree is in accordance with the prayer of the cross-complaint and with her testimony.

On April 1, 1955, the court entered the following nunc pro tunc decree:

"It appearing to the court that the Decree heretofore entered by the clerk in the above entitled matter is not a correct memorial of the Decree as rendered and announced by this court in the above entitled matter in that said Decree as rendered and announced by said court provided that 'the defendant will be directed to pay $50.00 a month for the support of the children'; and

"WHEREAS, through inadvertence and a clerical error, the sum of $30.00 was inserted in said decree instead of the sum of $50.00 a month for the support of the children;

"NOW, THEREFORE, IT IS HEREBY ORDERED that the Decree heretofore entered by the court in the above matter on the first day of February, 1939, be and the same is hereby corrected

to conform to the actual Decree announced and rendered by this court by changing paragraph three thereof to read as follows:

" 'IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the said James W. Hubbard shall pay to the defendant herein the sum of $50.00 a month for the support of their minor children, the first month's payment to be made on the first day of February, 1939, and the sum of $50.00 to be paid the first day of each month thereafter.'

"That this Order correcting the record of said Decree be entered nunc pro tunc to appear of record as of the first day of February, 1939, that being the date when said Decree was originally made and entered.

"Done in open court this 1st day of April, 1955."

At the time that the foregoing nunc pro tunc decree was entered James W. Hubbard was dead.

Thereafter, on April 21, 1955, the executrix filed a motion to vacate the nunc pro tunc decree based on the following grounds: (1) that the court had no jurisdiction to enter it; (2) that neither James W. Hubbard, deceased, nor the executrix of his estate was given notice of the proposed change in the decree, and therefore he and his estate have been deprived of property without due process of law; and (3) that the decree dated February 1, 1939,

"was in accordance with the allegations of defendant's amended answer and cross-complaint, and in accordance with the testimony of the defendant, and the intention of the court and the parties at the time of the entry of the decree, and was relied upon by the defendant in subsequent levies of execution, and the entry of said judgment in the sum of $30.00 per month for the support of said minor children was not through inadvertence or clerical error, but in accordance with the intention of the court and the parties, as aforesaid."

A hearing was had on said motion before Judge Donald E. Long, who signed both decrees, at which the respective parties were represented by counsel. Thereafter the court, on June 6, 1955, entered an order which recited that the nunc pro tunc decree was entered for the sole purpose of correcting a clerical error inadvertently appearing in the original decree, and denied the motion to vacate. It is from this order that the appeal has been taken by the executrix.

The testimony in the divorce suit was taken down and a transcript thereof, duly certified by the official court reporter, was filed in the case pursuant to ORS 8.400. In the transcript appears the following statement by the court made at the conclusion of the testimony:

"You may have your decree, the care and custody of the children, and the defendant will be directed to pay *$50.00* a month for the support of the children." (Italics added.)

As shown by the judge's oral opinion on the motion to vacate the nunc pro tunc decree, as well as by a recital in that decree, he relied on this record as the justification for the correction. He said:

"I have reviewed the testimony in this case and there is no question but what the court said at the time the testimony was taken in 1938 [sic]—Mr. Rauch was the reporter and a very accurate court reporter—and at that time the court was apparently dissatisfied with the request for support money for two children, 8 and 10 years of age, and this transcript shows the court said * * * [the court then quoted the statement from the reporter's transcript set out above]."

The judge did not claim to have any independent recollection of the case.

■ During the term at which a judgment is rendered the court has jurisdiction to change it. After the expiration of the term, if control of the judgment has not been retained in some proper manner, or if there is no statute otherwise providing, that power no longer exists, except that the court may still correct clerical, as contrasted with judicial errors, in order to make the record speak the truth and conform it to what actually occurred. *Safeway Stores, Inc. v. Ohlsen*, 192 Or 1, 18-21, 233 P2d 778; *Bogh v. Bogh*, 185 Or 93, 103-106, 202 P2d 503.

In an early case it was held by this court that where a mistake is not apparent on the record and must be made out upon evidence *aliunde* the court is powerless to alter the judgment after the term at which it was rendered. *Nicklin v. Robertson*, 28 Or 278, 286, 42 P 993, 52 Am St Rep 790. See, also, *Senkler v. Berry*, 52 Or 212, 217, 96 P 1070; *Cochran v. Baker*, 34 Or 555, 52 P 520, 56 P 641. Doubt was cast upon this restrictive rule by the opinion in *Grover v. Hawthorne*, 62 Or 65, 72-75, 116 P 100, 121 P 804; and in *State v. Donahue*, 75 Or 409, 416-417, 144 P 755, 147 P 548, 5 ALR 1121, it was held that the entry of a nunc pro tunc order for the purpose of amending or correcting the record may be sustained if merely based on the court's memory or on any competent legal evidence foreign to the record. See, also, *Richey v. Robertson*, 86 Or 525, 531-532, 169 P 99; *Costello v. Costello*, 120 Or 439, 440, 442, 251 P 303; *State v. Lillie*, 172 Or 194, 204, 139 P2d 576.

It is also held by the weight of authority, and, as we think, the better reasoning, that, as stated in 1 Freeman on Judgments (5th ed) 284, § 146:

"* * * 'clerical' is employed in a broad sense as contradistinguished from 'judicial' error and

covers all errors, mistakes, or omissions which are not the result of the exercise of the judicial function. In other words, the distinction does not depend so much upon the person making the error as upon whether it was the deliberate result of judicial reasoning and determination, regardless of whether it was made by the clerk, by counsel or by the judge."

See, also, *State v. Lillie*, supra; 49 CJS 450, Judgments § 237; and cases cited in Annotation, 10 ALR 590.

■ It has been said by this court that "orders made *nunc pro tunc*, correcting or amending the record, will very seldom be disturbed by an appellate court, and never, except for an abuse of discretion or absolute want of authority to make them." *Grover v. Hawthorne*, supra, 62 Or at 68 and 76. While similar language has been used by courts in other jurisdictions (see cases in Annotation, 126 ALR 974), it is difficult for us to understand how a rule of that kind can be justly or intelligently applied in all cases unless it means that if there is evidence to support the lower court's action the appellate court will not disturb it. See, 30A Am Jur 580, Judgments § 594. In California it is held that a recital in the order made nunc pro tunc that a clerical error has crept into the court's first order is not conclusive of either the fact or the nature of the error. But, where such a recital rests upon evidence in which there is a substantial conflict, it will not be disturbed upon appeal. *In re Burnett's Estate*, 11 Cal2d 259, 79 P2d 89. This we believe to be a correct statement of a sound rule, and is substantially the rule that has been applied in our decisions: *State v. Lillie, Richey v. Robertson, State v. Donahue*, all supra; *White v. East Side Mill & Lumber Co.*, 84 Or 224, 229, 161 P 969, 164 P 736.

Of course, where the correction is made upon the basis of the court's memory different considerations come into play. We have said that in such a case "great caution should be exercised by the trial court," *State v. Donahue,* supra, 75 Or at 417, and other courts hold that this power should be limited to cases "in which the application is made within so short a time after the judgment is entered that the terms of the judgment pronounced will be fresh in the minds of both counsel and the court." *Blankenship v. Royalty Holding Co.,* 202 F2d 77 (10th Cir 1953); *Milwaukee Electric Crane & Mfg. Corp. v. Feil Mfg. Co.,* 201 Wis 494, 500, 230 NW 607.

■ Here we are not dealing with an order based upon the court's memory, but one based entirely on a discrepancy between language of a judgment signed by the judge and that found in the court reporter's transcript of the oral pronouncement of the decision from the bench. The question is whether 16 years later, when the conflict was called to the attention of the judge, he was warranted in holding that the reporter's transcript discloses the actual judgment rather than the signed judgment. He reasoned, as he stated in his oral opinion at the hearing of the motion to vacate the nunc pro tunc order, that "the court was apparently dissatisfied with the request for support money for two children eight and ten years of age." The circumstances, however, would seem to point to the signed order as intended to contain the terms of the judgment. The defendant and her attorney were in court when the judge announced his decision, and presumably heard it. The order, containing the allowance of $30 a month support money, was evidently prepared by the attorney and handed up to the judge for his signature, for it is typed on the stationery of the attorney.

So far as appears, the defendant never applied for correction of the record. If there was such an application it was not made until 16 years later, after Hubbard's death, and in the meantime the defendant, as the record shows, caused execution to issue against her former husband's property upon a judgment for $30 per month from February 1, 1939. Likewise, in the meantime the husband remarried and died, leaving a widow who is the executrix of his estate. Conceding the competency of the court reporter, it is entirely possible that he misunderstood what the judge said or made an error in transcribing his notes, and it is possible, also that the judge said "fifty" when he intended to say "thirty." The court, of course, was not bound by the allegations and prayer of the complaint in making an allowance for the support of the minor children, and the defaulting husband would not be heard to complain if an allowance in excess of that prayed for was made. *Nelson v. Nelson*, 181 Or 494, 500, 182 P2d 416; *Cox v. Cox*, 158 Or 74, 74 P2d 983; *Donahoe v. Alcorn*, 188 Okla 305, 108 P2d 786; and see cases cited in Annotation, 12 ALR2d 343. But it is reasonable to assume that if the court intended to increase the amount it would have, in view of the pleadings and testimony, given some explanation of its action. There is none in the record.

■ The facts determinative of the question are undisputed, and this court has all the knowledge of the case that the trial judge had. The signed judgment is part of the record; whether the reporter's transcript can be so considered we need not decide. It is, perhaps, what is sometimes vaguely referred to as a quasi record. *State v. Donahue*, supra, 75 Or at 416; *Summersett v. Summersett*, 40 Ala 596, 91 Am Dec 494; 30A Am Jur 598, Judgments § 620. In any event it is

not a judgment entry. The judgment entry, as appears from the writ of execution in the record, accords with the signed decree. At the most, there is no preponderance of evidence either way. The reporter's transcript and the signed decree balance each other. There is no substantial evidence to justify the attempted correction of a judgment which has stood unchallenged for 16 years, has been acted upon during that time by the defendant, and presumably relied upon by the deceased as fixing the limit of his liability to his divorced wife. His estate, if the decree nunc pro tunc is allowed to stand, is faced with what is in fact, though not in form, a retroactive interest-bearing judgment for $20 a month accumulated over a period of 10 years (i.e., from the time of the original decree to the coming of age of the younger child), of which the judgment debtor had never received any notice. When the older of the children came of age, had there been such a judgment of record, the remedy would have been open to the divorced husband to secure its modification based upon that fact. The nunc pro tunc judgment deprives him of that remedy. It is said that "The furtherance of justice is the principal reason for the correction by a court of clerical errors in the records of its judgments." 30A Am Jur 581, Judgments § 596. It does not seem to us that to sustain the nunc pro tunc entry in this case would serve that purpose.

■ Granted that in the ordinary case the oral pronouncement from the bench constitutes the judgment, rather than the clerk's entry, *Barone v. Barone*, 207 Or 26, 29-30, 294 P2d 609; *Safeway Stores, Inc. v. Ohlsen*, supra, that rule cannot be applied where the judge himself signs the judgment, many years go by before the attempted correction, and other circum-

stances in the record indicate that the judgment signed was the judgment intended. See 67 ALR 850.

*Frost v. District Court*, 96 Utah 106, 83 P2d 737, 96 Utah 115, 85 P2d 601, resembles this case on its facts. There the court reversed a nunc pro tunc decree entered four years after the entry of a decree which was signed by the judge. The nunc pro tunc decree made substantive changes in the original decree. The argument for the nunc pro tunc decree was that it conformed to the oral decision of the court transcribed by the reporter. It was held that the signed findings and judgment "indicate what was in the judge's mind when he signed them." See, also, *United States v. Hark*, 320 US 531, 534-535, 64 S Ct 359, 88 L ed 290, quoted with approval in *United States v. F. & M. Schaefer Brewing Co.*, decided April 7, 1958.

The order disallowing the motion to vacate the nunc pro tunc decree is reversed.