Argued May 20, affirmed July 15, petition for rehearing
denied September 9, 1959

# DAUGHARTY *v.* GLADDEN

341 P. 2d 1069

*Ben F. Forbes,* Portland, argued the cause and filed briefs for appellant.

*Robert G. Danielson,* Assistant Attorney General, argued the cause for respondent. With him on the briefs were Robert Y. Thornton, Attorney General, and Peter S. Herman, Assistant Attorney General, Salem.

Before McAllister, Chief Justice, and Warner, Perry, Sloan, O'Connell and Crawford, Justices.

PERRY, J.

Clifford Daugharty, plaintiff-appellant, (hereinafter referred to as "petitioner") was convicted on

November 19, 1951, in the circuit court of Deschutes County of the crime of uttering a forged check drawn on the Eugene Branch of the United States National Bank of Portland. On November 20, 1951, petitioner was sentenced to a term of 15 years in the Oregon State Penitentiary.

On December 9, 1954, petitioner filed a petition for a writ of habeas corpus in the circuit court for Marion County. Return was made by Clarence T. Gladden, defendant-respondent, (hereinafter referred to as "defendant"). After considerable delay petitioner filed his third amended traverse and to this amended traverse defendant filed a demurrer. Defendant's demurrer to the amended traverse being sustained, petitioner appeals.

On November 5, 1951, the grand jury of Deschutes County returned the following indictment against petitioner:

"C. M. Daugharty is accused by the Grand Jury of the County of Deschutes, State of Oregon, by this indictment of the crime of knowingly uttering and publishing a forged bank check committed as follows:

"The said C. M. Daugharty on the 5th day of October, A.D., 1951, in the said County of Deschutes and State of Oregon, then and there being, did then and there unlawfully and feloniously, with intent to injure and defraud, knowingly utter and publish as true and genuine to A. Raper, who is doing business as 'Waldorf' in Bend, Oregon, a

certain false and forged bank check in words and figures as follows:

"Eugene Branch — 96-19 / 1232

The United States National Bank of Portland, Oregon

"Eugene, Ore.   Oct. 4 1951   No. 185

Pay to the order of   C. M. Daugharty   $ 104.40

Armstrong   $ 104 and 40 cts   Dollars

"Double A Lumber Co.
2463 W. 6th St.
Eugene, Ore.
Chas. A. Spoor

he, the said C. M. Daugharty, then and there well knowing the said bank check to be false and forged and the name of Chas. A. Spoor signed on said check to be a forged and fictitious name, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.

"Dated at Bend, in the County aforesaid, this 5th day of November, A.D. 1951.

"(s) E. O. Stadter,

District Attorney."

Jury trial was had and the jury returned the following verdict:

"TWELFTH JUDICIAL DAY

MONDAY NOVEMBER 19 1951

IN THE CIRCUIT COURT OF THE STATE OF OREGON FOR DESCHUTES COUNTY

"State of Oregon, Plaintiff )
                            )      #8299
            vs.             )
                            )    V E R D I C T
C. M. Daugharty, Defendant )

"We, the jury duly and regularly empaneled and sworn to hear and try the above entitled case and cause hereby find the defendant guilty as charged in the indictment.

"(signed) Steve M. Jackson

Foreman

Nov. 19, 1951."

On November 20, 1951, the judgment order of the court was entered as follows:

"THIRTEENTH JUDICIAL DAY

TUESDAY NOVEMBER 20, 1951

IN THE CIRCUIT COURT OF THE STATE OF OREGON FOR THE COUNTY OF DESCHUTES

"State of Oregon,           )
                            )
                  Plaintiff )
                            )  JUDGMENT ORDER
            vs.             )        #8299
                            )
C. M. Daugharty,            )
                 Defendant  )

"BE IT REMEMBERED, that at the regular term of the court begun and held at Bend, Oregon, on the 5th day of November, 1951, when on this

20th day of November, 1951, one of the days of said term of said court, there being present:

Honorable Ralph S. Hamilton, Circuit Judge
E. O. Stadter, District Attorney
C. L. McCauley, Sheriff
Helen M. Dacey, Clerk

the following proceedings were had, to-wit:

"The defendant appeared before the court at ten o'clock A.M. on this date accompanied by his attorney, George Rakestraw, and in the custody of the Sheriff of this county, the State of Oregon being represented by E. O. Stadter, District Attorney.

"The District Attorney then stated that the defendant in this case had been indicted by the grand jury of this county on November 5, 1951, for the crime of forgery and that on November 9, 1951, he had entered a plea of not guilty to said charge before this court; that on November 19, 1951, a hearing was held before a jury on said charge against the defendant and on said November 19, 1951, the said jury found the defendant GUILTY of the crime of forgery.

"The court then stated that the defendant was entitled to have two days time before having sentence passed upon him and the defendant, through his attorney, stated that he wished to have sentence passed at this time.

"A statement was then made by the District Attorney concerning this case and the defendant's attorney then stated that he did not wish to make any statement but that the defendant wished to personally make a statement in his own behalf. The court then asked the defendant and his attorney if there was any objection to having the Federal Bureau of Investigation record on the defendant

considered by the court at this time and both stated that there was no objection.

"The court then ordered the defendant to stand up and advised him that it was his privilege to make any statement he wished at this time and the defendant thereupon made a statement in his own behalf. The court then questioned the defendant regarding his past life, marital situation, education, employment, etc., and then considered the defendant's record as shown by the report of the Federal Bureau of Investigation.

"The court then asked the defendant if he knew of any reason why sentence should not now be imposed upon him and he replied that he did not.

"NOW, THEREFORE, The court being fully informed in this case, it is hereby ORDERED and ADJUGED that the defendant be, and he hereby is, sentenced to serve not to exceed fifteen years in the Oregon State Penitentiary at Salem, Oregon, and he is hereby remanded to the custody of the Sheriff of this county for delivery to said institution.

"Dated at Bend, Deschutes County, Oregon, this 20th day of November, 1951.

"(s) Ralph S. Hamilton
Circuit Judge"

Upon the authority of this judgment the petitioner was delivered to the warden of the Oregon State Penitentiary.

Thereafter, and on February 5, 1953, the court made the following order:

"At this time the court's attention has been called to the Judgment Order made and entered herein in the above entitled case and cause on the 20th day of November, 1951, wherein it is erroneously recited that the defendant had been indicted

by the Grand Jury of this county on November 5, 1951, for the crime of 'forgery' and that the said statement to the effect that the said defendant had been indicted for the crime of 'forgery' was an error and that the crime for which the said defendant was duly and regularly indicted by the Grand Jury on the said 5th day of November, 1951, was and is the crime of 'knowingly uttering and publishing a forged bank check' and that the said defendant was thereafter arraigned on said indictment and that the said defendant, on the 9th day of November, 1951, entered a plea of not guilty thereto; that thereafter and on November 19, 1951, a hearing was held and a trial was had before a jury on said charge of 'knowingly uttering and publishing a forged bank check' and the said jury found the defendant guilty of said charge; that the said order herein referred to erroneously stated that the said charge was 'forgery', whereas in truth and in fact the said charge was and is 'knowingly uttering and publishing a forged bank check'; that the said defendant was thereafter sentenced to serve a term of fifteen years in the Oregon State Penitentiary based on the said indictment, trial and conviction of the crime of knowingly uttering and publishing a forged bank check and this order correcting the name of the crime as erroneously stated in said order on which the said defendant was convicted is now entered nunc pro tunc as of, and on, the 20th day of November, 1951.

"Dated at Bend, Deschutes County, Oregon, this 5th day of February, 1953.

> "(s) Ralph S. Hamilton
> Circuit Judge"

And in accordance therewith the original judgment was changed by substituting for the word "forgery" the words "knowingly uttering and publishing a forged bank check."

This action of the trial court in entering its nunc

pro tunc order was taken without notice to the petitioner.

It is the contention of petitioner that the original judgment entered was void because it recites the conviction of and sentencing of the petitioner for a crime different from that for which he was tried and convicted and that the void judgment cannot be validated after the term without notice to him.

■ There is no question but that the crime of forgery and the crime of uttering a forged instrument may be separate and distinct crimes. *State v. Swank,* 99 Or 571, 195 P 168. Neither can there be any question but that under our statutes the petitioner was tried and convicted of the crime of forgery, as will later be pointed out. Therefore, the question posed by petitioner of whether or not, under the circumstances set forth, the trial court has the authority to correct its journal of judgment in accordance with the truth as disclosed in the record is immaterial.

■ A judgment is given by the act of the trial court in pronouncing sentence upon a person convicted of crime, and when the judgment is given " * * * the clerk must enter the same in the journal stating briefly the crime for which the conviction has been had; * * *," § 1578, LOL (§ 26-1219, OCLA, now ORS 137.170); *Long v. Minto,* 81 Or 281, 158 P 805.

■ While it is the practice in many of our trial courts for the judge to sign the journal entries of the court, there is no statute requiring this procedure in criminal cases. *Long v. Minto,* supra.

■ The error, therefore, if committed, was by the clerk in misnaming the crime upon entering his memorial of the judgment. This court has for many years held that the trial court has inherent power,

after the expiration of the term, to correct its clerical errors to speak the truth. *Belcher v. Pentecostal Church,* 216 Or 74, 338 P2d 100; *Dugger v. Lauless,* 216 Or 188, 338 P2d 660; *Hubbard v. Hubbard,* 213 Or 482, 324 P2d 469; *Safeway Stores, Inc. v. Ohlsen,* 192 Or 1, 233 P2d 778; *Bogh v. Bogh,* 185 Or 93, 202 P2d 503.

The petitioner cites *Hubbard v. Hubbard,* 213 Or 482, 324 P2d 469, and *Barone v. Barone,* 207 Or 26, 294 P2d 609, as holding that the oral pronouncement of the court is not itself the judgment. These cases are not in point. They were decided under the code of civil procedure governing decrees in equity suits where the trial court must determine the facts and the rights of the parties. The statutes governing such judgments provide "* * * the clerk shall be subject to the direction of the court." § 6-701, OCLA, now ORS 18.030. It is, therefore, noted that the pronouncement of the trial court becomes the judgment only when ordered entered in the journal, for until such action is taken as directed by the court "the case remains in the bosom of the court."

██ That this was a clerical mistake and not judicial is clear from the definition set out in 1 Freeman on Judgments (5th ed) 284, § 146:

"* * * 'clerical' is employed in a broad sense as contradistinguished from 'judicial' error and covers all errors, mistakes, or omissions which are not the result of the exercise of the judicial function. In other words, the distinction does not depend so much upon the person making the error as upon whether it was the deliberate result of judicial reasoning and determination, regardless of whether it was made by the clerk, by counsel or by the judge. * * *"

When the jury returns a verdict of guilty, it is

the duty of the judge to pronounce the punishment. There alone is he required to exercise judicial discretion; no other duty rests upon him with reference to the judgment. No contention is made by the petitioner but that the pronouncement of the court as recorded relative to the punishment is correct.

The petitioner argues, however, that the judgment was void and that the trial court could not set it aside and enter a valid judgment without notifying him or his counsel and affording him an opportunity to be present.

■ While it is a general rule that to protect interested parties notice should be given when an application is made to correct a judgment or its record, such notice is not necessary where the error is apparent on the face of the entire court record and the correction thereof could not be successfully opposed. *Bernard v. Abel*, 156 F 649 (9th Cir 1907); 10 ALR 587; 14 ALR 2d 254. Stated simply, the law will not require the doing of a useless act.

What we have said regarding the right of a trial court to correct its journal entry of judgment in criminal cases need not here control, however, for as will be later noted the statute under which petitioner was convicted states but a single crime which may be committed by an act of forgery or uttering.

8. As we view the statute which provides the clerk shall "briefly state the crime" for which defendant was convicted, the clerk was empowered to use either the word "forgery" or the words "knowingly uttering and publishing a forged bank check." Either designation would have informed all persons that he had violated § 23-560, OCLA.

The petitioner also contends that the trial court

was without jurisdiction to pronounce judgment upon him, because "* * * the indictment on which plaintiff was convicted does not charge plaintiff with any known criminal offense under the laws of the State of Oregon."

The basis of this contention seems to be that on the caption of the indictment there appears these words: "Section 23-562, O.C.L.A."

■ Petitioner construes this section to apply only to evidences of debt issued by the "United States, this state or any state or territory" as provided in section 23-561, mentioned in § 23-562, whereas the face of the indictment shows it was a personal obligation. The words "Section 23-562 O.C.L.A." are not a part of the charging part of the indictment, and may not be considered as an accusation against petitioner. The sufficiency of an indictment, which must inform a defendant of the crime of which he is charged, is found in the acts he is alleged to have committed as set forth therein. *State of Oregon v. Davis,* 207 Or 525, 296 P2d 240; *State v. Christiansen,* 150 Or 11, 41 P2d 442; *State v. Bailey,* 115 Or 428, 236 P 1053.

In this case, the charging part of the indictment alleges acts constituting the crime of uttering a forged check as provided in Section 23-560, OCLA.

■ The petitioner also contends, as we understand the argument of counsel, that the criminal code adopted by legislative enactment in 1864, which contains a Section 584, described as Section 23-560, OCLA, at the time of petitioner's conviction, was never lawfully enacted.

Petitioner's argument seems to be based upon two propositions:

First, he contends that the code revision committee

appointed by legislative enactment exceeded its authority in drafting and presenting to the legislature for adoption Section 584 of the General Laws of Oregon 1864, because the committee made substantive changes therein and failed to call the legislature's attention to these changes before passage.

Second, he contends that the change made was adopted from what was known in territorial days as Chapman's Code and, since this code was in its entirety held unconstitutional by a territorial court, it must follow this act is unconstitutional. This contention is frivolous and utterly without merits. See History of the Oregon Code, 1 OLR 184.

The petitioner's first contention is also without merit. He states his position thus:

"It is plaintiff's position that under the powers delegated to the Code Commission by Senate Joint Resolution #8, dated October 20, 1860, the Oregon Code Commissioners had no authority to enact an entirely new Section (584) in lieu of Sections 1 and 2 of Chapter 5, Oregon Laws 1855, and that although the code in which Section 584 was adopted by the Legislative Assembly as part of the entire criminal code, this section is void."

Sections 1 and 2 of Chapter 5, Oregon Laws 1855, as cited by petitioner, was an enactment of the territorial legislature and reads as follows:

"Section 1. Every person who shall falsely make, alter, forge or counterfeit any public record, or any certificate, return or attestation of any clerk of the court, register, notary public, justice of the peace, or any other public officer, in relation to any matter wherein such certificate, return or attestation, may be received as legal proof; or any charter, deed, will, testament, bond, writing, obligatory, letter of attorney, policy of insurance, bill of lading, bill of exchange, promissory note, or any

order, acquittance or discharge for money, or any other property, or any acceptance of a bill of exchange, endorsement, or assignment of a bill of exchange, promissory note, or any accountable receipt for money, goods, or other property, with intent to injure or defraud any person, upon conviction, shall be punished by imprisonment in the penitentiary not more than ten, nor less than 2 years, or by fine of not more than $10,000, or less than $100."

"Section 2. Every person who shall utter and publish as true, any false, forged or altered record, deed, instrument, or other writing, mentioned in the next preceding section, knowing the same to be false and forged or altered, with intent to injure or defraud as aforesaid, shall, on conviction be punished by imprisonment in the penitentiary not more than ten years, nor less than one year."

This Act was to continue in force until altered or rejected. Section 7, Article XVIII, Oregon Constitution.

The legislative assembly of 1860 adopted the following resolution:

"Resolved, by the Legislative Assembly of the State of Oregon that a committee of 3 be raised, to consist of one elected by the Senate and two elected by the House of Representatives whose duty it shall be to revise the statutes of the state and report a complete system of laws, as in their opinion may be suited to the wants of the people, taking our existing statutes as a basis and dividing the same into appropriate subdivisions and chapters."

We are of the opinion this resolution was ample to authorize the commission to "report a complete system of laws, as in their opinion may be suited to the wants of the people," in their new status as members of a sovereign entity. There is no evidence but that the Act in question was duly reported to the

legislature with any purported changes as compared with the territorial Act, and that the questioned statute was duly enacted by the state legislature.

In any event, comparison of the Territorial Act of 1855 with § 23-560, OCLA, hereinafter set out, discloses to us no substantive change, for while § 23-560 uses the word "check" which does not appear as such in the territorial enactment, nevertheless, the words "order for money" used in the territorial act is to all intents and purposes synonymous.

The petitioner also declares that the Act under which he was convicted is unconstitutional in that it violates the equal protection clauses of the United States and of this state. He says that under this court's interpretation of the laws of criminal procedure it is possible "* * * in the case of two individuals each having committed identical crimes, for example, 'forging' and 'knowingly uttering and publishing a forged instrument with intent to defraud' could very well be subjected to the arbitrary, capricious and unregulated discretion and bias of a magistrate or grand jury in this: That under the decisions of *State v. Rowen* [104 Or 1, 200 P 901 and *State v. Swank,* supra] one of said persons could be indicted for the crime of 'forging and uttering and publishing a forged instrument' in the same indictment and constituting but one crime with a maximum penalty of 20 years in the penitentiary; Whereas the other person could be indicted for two separate and distinct crimes by two indictments, one charging the defendant with the crime of 'forging a written instrument' with a maximum penalty upon conviction of 20 years in the penitentiary, and in the second indictment charged with the crime of 'knowingly uttering and publishing a forged instrument' with a maximum penalty upon

conviction of 20 years in the penitentiary, or a total of 40 years."

The answer to this is to be found under § 23-560, OCLA, the statute under which defendant was convicted, which is as follows:

"If any person shall, with intent to injure or defraud any one, falsely make, alter, forge, or counterfeit any public record whatever, or any certificate, return, or attestation of any clerk, notary public, or other public officer, in relation to any matter wherein such certificate, return, or attestation may be received as legal evidence, or any note, certificate, or other evidence of debt issued by any officer of this state, or any county, town, or other municipal or public corporation therein, authorized to issue the same, or any application to purchase state lands or assignment thereof, contract, charter, letters patent, deed, lease, bill of sale, will, testament, bond, writing obligatory, undertaking, letter of attorney, policy of insurance, bill of lading, bill of exchange, promissory note, evidence of debt, or any acceptance of a bill of exchange, indorsement, or assignment of a promissory note, or any warrant, order, or check, or money, or other property, or any receipt for money or other property, or any acquittance or discharge for money or other property, or any plat, draft, or survey of land; or shall, with such intent, knowingly utter or publish as true or genuine any such false, altered, forged, or counterfeited record, writing, instrument, or matter whatever, such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary for not less than two nor more than twenty years."

This statute clearly states but a single crime which may be committed by committing forgery or uttering, or both, as these crimes were known to the common law.

The case of *State v. Rowen, et al.,* 104 Or 1, 9, 200 P 901, points out this fact when we stated:

"It has long been one of the general rules recognized in this state for construing indictments and informations, that where several acts are enumerated alternatively in the statute, the doing of each one being prohibited under a given penalty, they may be charged conjunctively as one offense, when not repugnant to each other: State v. Carr, 6 Or. 133; State v. Bergman, 6 Or. 341; Cranor v. City of Albany, 43 Or. 144 (71 Pac. 1042); State v. White, 48 Or. 416 (87 Pac. 137); State v. Bilyeu, 64 Or. 177, 180 (129 Pac. 768); State v. Leonard, 73 Or. 451 (144 Pac. 113, 681); State v. Dale, 8 Or. 229; State v. Humphreys, 43 Or. 44 (70 Pac. 824)."

The confusion which leads to petitioner's erroneous conclusion arises through a misapplication of statutory law to the facts in the case of *State v. Swank,* 99 Or 571, 195 P 168. In that case, defendant was charged and convicted of making and forging a promissory note. In discussing the question of venue, the court cited § 1997, Or L and 1998 Or L, neither of which were applicable to the facts of that case. These laws cited, which were at the time of petitioner's conviction § 23-561 and § 23-562, OCLA, separately state as distinct and separate crimes, forgery and uttering, but, as will be noted from an examination of the context, they apply only to the forging or uttering of an instrument purported to be executed by a sovereign entity "or any corporation, company or person duly authorized" by the sovereign entity to issue a "bank bill, promissory note, draft, check, or other evidence of debt."

These statutes were not applicable to the indictment in the Swank case, nor are they applicable to the petitioner's indictment. Therefore, the statement

therein made to the effect that forgery and uttering are two separate and distinct crimes must be limited to cases where § 23-561 and § 23-562, OCLA, govern the actions of an accused.

As pointed out by petitioner, the criminal laws of this state were adopted from those of the state of New York. The making of a forged instrument and the uttering of it by the same person is but a single crime. *People v. Adler,* 140 NY 331, 35 NE 644. See, also, *State v. Klugherz,* 91 Minn 406, 98 NW 99.

The petitioner also contends that he was not guilty of the crime of uttering a forged instrument because the instrument shows upon its face that it was executed as genuine by an agent of the company; therefore, he was guilty of no more than obtaining money under false pretenses.

12. Petitioner cites numerous cases, but *Mann v. People,* 22 NY 155 (15 Hun), a case upon which he relies, is illustrative of the speciousness of his argument. In that case, the defendant signed his own name to a purported warrant as treasurer of the county. He was not treasurer nor did he have any authority to sign. The court held that this was not a forgery, because he signed his own name and only represented he was the authorized party, which he was not.

In the present case, the petitioner was charged in the indictment and convicted upon evidence showing he knew the check was signed by a fictitious person as agent of the company when he uttered the check.

Some of the contentions of the petitioner discussed herein are not properly raised by this proceeding. However, we have considered all of his contentions on the merits, and the judgment of the trial court is affirmed.

WARNER, J., sat, but did not participate in the decision.